## KANSAS CITY, M. & O. RY. CO. OF TEXAS v. STATE.†

(Court of Civil Appeals of Texas. Austin. Feb. 15, 1913. Rehearing Denied March 19, 1913.)

**1. ABATEMENT AND REVIVAL (§ 8*)—FORMER ACTION PENDING—IDENTITY OF CAUSES AND PARTIES.**

The pendency of an action brought by citizens of a county seat to compel a railroad company to comply with Const. art. 10, § 9, providing that no railroad shall pass within three miles of a county seat without passing through it and establishing and maintaining a depot therein, unless prevented by natural obstacles, provided the town or its citizens grant a right of way and sufficient ground for ordinary depot purposes, was not ground for abating a subsequent action by the state to compel it to construct its road through the county seat and to recover a penalty for its failure and refusal to do so; the parties and the causes of action asserted not being the same.

[Ed. Note.—For other cases, see Abatement and Revival, Cent. Dig. §§ 39–72; Dec. Dig. § 8.*]

**2. RAILROADS (§ 44*)—LOCATION OF ROAD—ACTIONS—PETITION.**

In an action by the state for a writ of mandamus or mandatory injunction to compel compliance with Const. art. 10, § 9, providing that no railroad shall pass within three miles of a county seat without passing through it and maintaining a depot therein, unless prevented by natural obstacles, provided the town or its citizens shall grant a right of way and sufficient ground for ordinary depot purposes, and to recover a penalty for the company's willful failure and refusal to comply therewith, a petition which alleged that the company had constructed its road within three miles of the county seat, an unincorporated town of about 400 inhabitants, without passing through it and without establishing and maintaining a depot, as required by the Constitution and laws of the state, the citizens of the town having tendered to it, prior to the construction of the road, a practicable right of way through its limits and sufficient ground for ordinary depot purposes, that there were no natural obstacles to prevent it passing through the town, that the state and the people thereof had an interest in and right to have the company comply with such provision and in having a depot maintained in the town for the convenience and transaction of their business with county officials and with the various courts, and for receiving and delivering passengers and freight, and that the company's failure to comply with the Constitution and laws would subject the people of the state to great inconvenience and expense, to which they would not be subjected if the railway was constructed through the town and a depot established and maintained therein, was not demurrable.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 101; Dec. Dig. § 44.*]

**3. ABATEMENT AND REVIVAL (§ 44*) — APPOINTMENT OF RECEIVER—EFFECT ON PENDING ACTIONS.**

The appointment of a receiver for a railroad corporation by a federal court, pending an action by the state to compel compliance with Const. art. 10, § 9, providing that no railroad shall pass within three miles of a county seat without passing through it and maintaining a depot therein, unless prevented by natural obstacles, where the town or its citizens grant a right of way and sufficient ground for ordinary depot purposes, did not require the abatement, dismissal, or suspension of such action.

[Ed. Note.—For other cases, see Abatement and Revival, Dec. Dig. § 44;* Corporations, Cent. Dig. § 2249.]

**4. RAILROADS (§ 44*)—LOCATION OF ROAD—ACTIONS—PARTIES.**

Under Const. art. 10, § 9, providing that no railroad shall pass within three miles of a county seat without passing through it and maintaining a depot therein, unless prevented by natural obstacles, if the town or its citizens grant a right of way and sufficient ground for ordinary depot purposes, the state may maintain a suit to compel compliance therewith by mandamus or mandatory injunction; the right of action not being vested exclusively in the town or its citizens, since the state is interest-

ed in the enforcement of its Constitution and laws.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 101; Dec. Dig. § 44.*]

**5. RAILROADS (§ 44*)—LOCATION OF ROAD—CONSTITUTIONAL PROVISIONS—WAIVER.**

A railroad company offered to construct its line near a county seat and to establish a depot at the nearest point thereto, if the citizens of the county seat would grant a right of way through the county free of charge. The offer was unanimously accepted at a mass meeting of 35 or 40 citizens out of a population of 400, and a committee appointed, who, by a contract with the company, obligated themselves to furnish a right of way; the company binding itself to construct the road, but no provision being contained as to establishing a depot. The right of way was obtained, the road constructed, but no depot established. *Held*, that compliance with Const. art. 10, § 9, providing that no railroad shall be constructed within three miles of a county seat without passing through it and maintaining a depot therein, unless prevented by natural obstacles, if the town or its citizens shall grant a right of way and sufficient ground for ordinary depot purposes, had not been waived; the mass meeting having no authority to waive such requirement, and, even if they had, the company not having carried out the offer accepted by the meeting.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 101; Dec. Dig. § 44.*]

**6. RAILROADS (§ 44*)—LOCATION OF ROAD—CONSTITUTIONAL PROVISIONS—WAIVER.**

Even if the town and its citizens had waived their right to require the construction of the road through the county seat, the state, not having been a party to the agreement, was not restricted in its right to compel compliance with the constitutional provision.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 101; Dec. Dig. § 44.*]

**7. LIMITATION OF ACTIONS (§ 58*)—ACCRUAL OF CAUSE OF ACTION.**

Limitations would run against a right of action to compel a railroad company to construct its road through a county seat within three miles of its line, as required by Const. art. 10, § 9, only from the time the road was constructed within three miles of the town, and not from the time the profiles of the right of way were filed with the county clerk.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 324–328, 346, 347; Dec. Dig. § 58.*]

**8. LIMITATION OF ACTIONS (§ 11*)—LIMITATION AS AGAINST STATE.**

Limitations would not run against a right of action by the state to compel a railroad company to construct its road through a county seat within three miles of its line, as required by Const. art. 10, § 9.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 35–39; Dec. Dig. § 11.*]

**9. RAILROADS (§ 44*)—LOCATION OF ROAD—ACTIONS—QUESTIONS OF LAW OR FACT.**

Under Const. art. 10, § 9, providing that no railroad shall pass within three miles of a county seat without passing through it and maintaining a depot therein, unless prevented by natural obstacles, if the town or its citizens shall grant a right of way and sufficient ground for ordinary depot purposes, in an action to compel compliance therewith, the question whether there were any natural obstacles preventing the construction of the road through the town was one of fact.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 101; Dec. Dig. § 44.*]

**10. APPEAL AND ERROR (§ 1050*)—HARMLESS ERROR—ADMISSION OF EVIDENCE.**

In 1902 a railway company made its survey near a county seat, an unincorporated town, and filed its profiles. In 1907 the town was incorporated, but the incorporation was dissolved in 1910. The road was constructed in 1911. In a suit to compel compliance with Const. art. 10, § 9, providing that no railroad shall pass within three miles of a county seat without passing through it and maintaining a depot therein, unless prevented by natural obstacles, provided the town or its citizens shall grant a right of way and sufficient ground for ordinary depot purposes, the company alleged as a defense, among others, that its road passed through the corporate limits of the town. Evidence was received, over the company's objection, that the corporate limits included areas of farming land not proper to be embraced. *Held* that, if the admission of this evidence was error, as a collateral attack upon the incorporation, it was harmless; there having been no incorporation, either when the survey was made or when the road was constructed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4153–4160, 4166; Dec. Dig. § 1050.*]

**11. RAILROADS (§ 44*)—LOCATION OF ROAD—ACTIONS—JUDGMENT.**

In an action by the state to compel the construction of a railroad through a county seat within three miles of its line of road, as required by Const. art. 10, § 9, the judgment ordered the company, within 30 days, to survey a route through the town and locate a depot site, and further ordered that the citizens of the town be allowed 90 days after notice of the completion of the survey to secure the grant of the right of way and sufficient ground for depot purposes, and to tender such grants and conveyances to the company, and that, in the event such deeds and grants could not be secured voluntarily, such citizens, or any of them, might execute an obligation, to be approved by the judge, conditioned for the payment of all expenses of procuring such right of way and depot grounds by condemnation proceedings, and tender such obligation, and ordered the company, when such tender had been made, to institute the necessary condemnation proceedings and do all other things necessary to secure such right of way and depot grounds. *Held*, that the judgment was not objectionable as being against the citizens of the town, who were not parties to the suit, since no judgment was rendered against the citizens, but conditions imposed upon them merely as the measure of the company's obligation and duty, a failure to perform which would release the company from the requirements of the judgment.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 101; Dec. Dig. § 44.*]

**12. APPEAL AND ERROR (§ 1050*)—HARMLESS ERROR—ADMISSION OF EVIDENCE.**

In an action against a railroad company to compel it to construct its road through a county seat within three miles of its line of road, as required by Const. art. 10, § 9, the admission of evidence that citizens of the town had mailed a bond to an officer of the company, conditioned to furnish right of way deeds and deeds to depot grounds or to pay the expenses incident to condemnation, if erroneous, where it appeared that such bond was not received by the company's officer, was harmless; the duty being on the company to take the initial step and designate the right of way before the citizens of the town were required to tender or grant the right of way.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4153–4160, 4166; Dec. Dig. § 1050.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

**13. EVIDENCE (§ 513*)—OPINIONS—SUBJECTS OF EXPERT TESTIMONY.**

In an action to compel compliance with Const. art. 10, § 9, providing that no railroad shall pass within three miles of a county seat without passing through it and maintaining a depot therein, unless prevented by natural obstacles, such as streams, hills, or mountains, provided the town or its citizens shall grant a right of way and sufficient ground for ordinary depot purposes, an experienced and skilled civil engineer, who had gone over the ground and examined the maps and profiles filed with the Railroad Commission, could testify that there were no hills, streams, or mountains preventing the building of the road through the town, and that no such obstacles were shown by the maps and profiles, especially where another witness testified to the same effect without objection.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2317, 2318; Dec. Dig. § 513.*]

**14. APPEAL AND ERROR (§ 742*) — ASSIGNMENTS OF ERROR—STATEMENTS.**

Assignments of error, not followed by explanatory statements, will be overruled.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

**15. RAILROADS (§ 44*)—LOCATION OF ROAD—STATUTORY PROVISIONS.**

Under Const. art. 10, § 9, providing that no railroad shall pass within three miles of a county seat without passing through it and maintaining a depot therein, unless prevented by natural obstacles, if the town or its citizens shall grant a right of way and sufficient ground for ordinary depot purposes, a railroad company, when it determines to pass within three miles of a county seat, must, unless prevented by natural obstacles, survey its line through the town and select a site for depot grounds, and not until then does the duty devolve upon the town or the citizens of furnishing such right of way and depot grounds.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 101; Dec. Dig. § 44.*]

**16. INJUNCTION (§ 67*) — RAILROADS — MANDATORY INJUNCTION.**

Where a railroad company willfully fails to comply with Const. art. 10, § 9, requiring railroads to pass through county seats within three miles of their line, the court can enforce obedience thereto by mandatory injunction.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 135; Dec. Dig. § 67.*]

**17. RAILROADS (§ 44*)—LOCATION OF ROAD—STATUTORY PROVISIONS.**

The courts may compel railroad companies to comply with Const. art. 10, § 9, requiring railroads to pass through county seats within three miles of the line of road, although the road has passed the town before suit is filed.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 101; Dec. Dig. § 44.*]

**18. RAILROADS (§ 44*)—LOCATION OF ROAD—STATUTORY PROVISIONS.**

The statute authorizing the recovery of a penalty for failure to comply with Const. art. 10, § 9, requiring railroads to pass through county seats within three miles of the line of road, is not unconstitutional.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 101; Dec. Dig. § 44.*]

Appeal from District Court, Travis County; George Calhoun, Judge.

Action by the State against the Kansas City, Mexico & Orient Railway Company of Texas. From a judgment in favor of the State, defendant appeals. Affirmed.

H. S. Garrett and Hill, Lee & Hill, both of San Angelo, Gregory, Batts &· Brooks, of Austin, and Blanks, Collins & Jackson, of San Angelo, for appellant. James D. Walthall, Atty. Gen., and Snodgrass & Dibrell, of Coleman, for appellee.

### Statement of the Case.

RICE, J. This suit was brought by the state of Texas, through its Attorney General, in the district court of Travis county, on the 7th of July, 1911, against appellant for a writ of mandamus or mandatory injunction to compel it to construct its line of railway through the town of Sherwood, the county seat of Irion county, and establish and maintain a depot therein, and for a penalty of $5,000 for having willfully failed and refused to do so, alleging that said company had constructed its road within less than three miles of said town (which is unincorporated, containing about 400 inhabitants) without passing through the same, and without establishing and maintaining a depot therein, as required by the Constitution and laws of this state, the citizens of said town having tendered to it, prior to the construction of its road, a practicable right of way through its limits and sufficient grounds for ordinary' depot purposes therein; further alleging that there were no natural obstacles to prevent said railroad from passing through same, such as streams, hills, or mountains, and that the state of Texas and the people thereof have an interest in and right to have said company obey and comply with the provisions of the Constitution and laws of this state, and that they have an interest in having a depot located and maintained in said town for the convenience and transaction of their business with the county officials of said county, and in attending to and transacting business in and with the various courts in and for said county, and for receiving and delivering passengers and freight thereat, and that such failure on the part of appellant to comply with the Constitution and laws of the state in this respect will subject the people of the state to great inconvenience and expense that they would not otherwise have been subjected to if appellant should construct a railway through said town and establish and maintain a depot therein.

Prior to the institution of this suit, certain of the citizens of Irion county, residents of Sherwood, instituted a suit in the district court of Tom Green county against appellant, which is still pending therein, to compel it to construct its roadway through said town of Sherwood, and establish and maintain a depot therein, the allegations of the petition in which case are, in many respects, similar to those in the instant case, and the pendency of which suit is pleaded in abatement hereof. See Felton v. Kansas City, Mexico & Orient Railway Company, 143 S. W. 650.

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

Subject to said plea, and after general denial and special exceptions and specific denial of material allegations in the petition, appellant relied upon and pleaded a number of affirmative defenses, summarized in its brief as follows:

(a) The four years' statute of limitation.

(b) Natural obstacles preventive of the construction of the road nearer to the town of Sherwood.

(c) That the matter of the location of the road had been settled between the railway company and the citizens of Sherwood by virtue of the contract hereinbefore referred to, and specially pleading such contract in bar of this action, and that the citizens of Sherwood, and the town of Sherwood, and the state, through them, was estopped to maintain this suit by virtue of said contract, and of the fact that the railway company had acted thereon and had expended large sums of money in the construction of its road, which would have been lost if the route had been changed when it first had any intimation that the route, as located, was not satisfactory to some of the citizens of Sherwood.

(d) That the railroad company had complied with all of its legal and constitutional obligations by securing a right of way through the corporate limits of the town of Sherwood while it was incorporated, and were engaged in the construction of its railroad when the corporation was abolished, and that its legal status had already been fixed and could not be changed by the ex parte action of such town and its citizens in abolishing its corporation.

(e) That the citizens of the town of Sherwood and such town having for a long time known the location of the line of the road and that the road was being constructed thereon, and having procured and tendered to the railroad company the identical right of way upon which the road was constructed, and knowing that the railroad company was relying on this contract, and was expending large sums of money in the construction of its railroad on this located line, had been guilty of laches in asserting any right, and were each and all estopped to demand the construction of the road at any other place, and that the state being in this case merely a formal party, and having instituted this suit for the benefit of Sherwood and its citizens, was also estopped.

(f) That no tender of right of way or depot grounds had ever been made to the railroad company prior to the institution of this suit.

(g) That, at the time of the institution of this suit, the railroad had already been constructed past the town of Sherwood, and that the suit came too late, and that to build an additional line to Sherwood would not be justified by the traffic to be obtained therefrom, and the cost of construction and maintenance thereof would be burdensome and an improper interference with the carriage of interstate commerce, in which the road was engaged.

The case was tried before the court without a jury, and, during the progress thereof, appellant company was placed in the hands of receivers by an order of the United States District Court for the Northern District of Texas, made on the 9th day of March, 1912; and, before the trial of the case had concluded, appellant filed its motion to dismiss this suit or to suspend it in order to make the receivers parties, which motion was overruled by the court. And the trial of the case proceeded, which resulted in the court's overruling all the contentions of appellant, and rendering judgment in favor of the state for the sum of $2,500 penalty, and further ordering that a permanent and final writ of mandatory injunction should issue, compelling appellant, within 30 days from the date of such order, to survey, locate, and establish a reasonable, feasible, and practicable route for its right of way into and through said town, and to survey and locate a reasonable and practicable depot site for ordinary depot purposes within said town, and, as soon as the same should have been done, to give notice in writing to the Attorney General of the state of that fact, and of the completion of the said survey, location, and establishment of said right of way and depot site in said town.

It was further ordered by the court "that the citizens of said town of Sherwood be, and they are hereby, allowed and granted 90 days from and after service of notice on the Attorney General, as aforesaid, of the completion of the survey, location, and establishment of said right of way into and through said town and said depot site, and sufficient grounds for ordinary depot purposes, to secure the grant to the said defendant Kansas City, Mexico & Orient Railway Company of Texas, free of any costs to the said defendant, the right of way through the limits of the said town of Sherwood, as hereinbefore fixed and established by the court, and sufficient ground for ordinary depot purposes within said town, which said right of way shall be secured by the citizens of said town, or any number of the citizens of said town, who may see proper to do so by securing deeds and grants therefor in due and proper form, conveying to the said defendant such right of way through the limits of said town, and sufficient ground for ordinary depot purposes, and shall tender said grants and conveyances to defendant by giving notice in writing to that effect and by making said tender of said grants and conveyances to defendant or to its attorneys of record, or any of them, in this case, which notice and tender may be made by any citizen of said town of Sherwood or his agent or attorney, or by the Attorney General of the state of Texas; and, in the event such deeds and grants, or any part thereof, cannot be

secured by voluntary conveyances from the owners of any lands over which the same may pass, then the said citizens of said town of Sherwood, or any number of them, shall execute, or cause to be executed, a good and sufficient obligation, to be adjudged of and approved by the judge of this court, payable to the defendant railway company, conditioned that such citizen or citizens will, on demand, pay and reimburse defendant for any and all sums of money paid by defendant in procuring and securing said right of way and depot grounds into and through the limits of said town of Sherwood, as herein found and fixed by this judgment, which sums shall include all reasonable damages, costs, expenses, and attorney's fees which shall have been paid by defendant in the necessary prosecution of such condemnation proceedings, which said obligation shall be executed by said citizen or citizens, as principal, together with sufficient sureties, which sureties may or may not be residents or citizens of said town of Sherwood; and, when said obligation will have been executed, the same, together with such grants of right of way and depot grounds as may have been secured, shall be tendered to defendant by giving notice thereof in writing to the defendant as (or) to its attorneys of record, or any of them, in this case, which said notice and tender of obligation and grants aforesaid, if any, shall be made within the period of 90 days, as hereinbefore provided for, and said notice and tender may be made by any citizen of said town of Sherwood, his agent or attorney, or by the Attorney General of the state of Texas; and, when said notice and tender of said obligation shall have been given and made as aforesaid, then the said defendant, Kansas City, Mexico & Orient Railway Company of Texas, is hereby ordered, directed, required, and compelled to immediately institute, or cause to be instituted, in the manner provided by law, condemnation proceedings in accordance with the provisions of the laws of this state for the purpose of securing such right of way and depot grounds as have not been procured by voluntary conveyances as aforesaid, and to diligently prosecute such condemnation proceedings, and to do and perform all things required by law or necessary in order to secure said right of way and depot grounds in said town by said condemnation proceedings aforesaid, including the payment of all damages awarded herein and costs and expenses necessary and incident thereto; and the citizens of said town of Sherwood, or any number thereof, shall and they are hereby required to reimburse and pay to the said Kansas City, Mexico & Orient Railway Company all costs and expenses necessary and reasonable in the prosecution and procurement of said right of way and depot grounds by said condemnation proceedings aforesaid, together with all

reasonable attorney's fees therefor, and that said citizens shall pay all costs and expenses incident thereto, and to the prosecution of said condemnation proceedings, including any and all awards of damages for such right of way and depot grounds through said town as may be made in such condemnation proceedings; and said citizens of said town of Sherwood are hereby ordered and required to save and keep harmless the said defendant railway company from any and all such costs and expenses, as well as damages, incident to the procuring of such right of way and depot grounds aforesaid, and all of which shall be held to be included in the obligation of said citzens as hereinbefore provided for." From which judgment this appeal is prosecuted.

The following findings of fact and conclusions of law were filed by the court, upon which said judgment was predicated:

### "Conclusions of Fact.

"The court finds and concludes from the evidence that the following facts were established, viz.:

"First. That the town of Sherwood is an unincorporated town, situated on the east side of Spring creek, in Irion county, Tex., and is now, and has been continuously since the organization of said county, the county seat of said county, and that its boundaries and location are easily ascertained on the ground by the location, collection, and aggregation of the houses constituting said town, and which includes the originally recorded plat of said town, as well as the adjacent lots and blocks on which are situated houses in said town, and all of which is fully shown and described on the map of said town set out and included in the judgment in this cause, and recorded in the minutes of this court, and which map shows the outside boundaries of said town.

"Second. That the defendant railway company has constructed and built, and now owns, maintains, and operates, its line of railroad up and along the west side of Spring creek and passing within a distance of less than 3 miles of said town of Sherwood, to wit, about 1¼ miles from said town, but does not pass through said town, and defendant has not established and is not maintaining a depot in said town.

"Third. That there are no natural obstacles, such as hills, streams, or mountains preventing the defendant from building and constructing its line of railroad into and through said town of Sherwood, or from establishing and constructing and maintaining a depot in said town, but that defendant can survey, locate, establish, construct, and maintain a feasible and practicable route for its railroad through said town, and can establish, construct, and maintain a depot in said town at a convenient and accessible point therein.

"Fourth. That the citizens of said town are now, and have at all times since the location of said defendant's railroad in said county been, ready, able, and willing to grant to the defendant railway company a right of way through the limits of said town, and sufficient grounds for ordinary depot purposes in said town, free of any cost to the defendant on whatever route through said town defendant might select.

"Fifth. That defendant can survey and locate a reasonable and feasible and practicable route for its right of way and roadbed through the limits of said town, and sufficient grounds for ordinary depot purposes in said town, and can do so within 30 days, and which is a reasonable time therefor.

"Sixth. That, after defendant shall have surveyed and located its said right of way through said town and depot grounds therein, the citizens of said town of Sherwood can secure a grant of the said right of way and depot grounds within 90 days thereafter, and which is a reasonable time therefor, unless the same or some part thereof shall have to be secured by condemnation proceedings, and in such case said citizens can ascertain that fact and execute an obligation to the defendant to hold it harmless from any cost or expense incident to such condemnation proceedings, and that they can do so within said period of 90 days aforesaid.

"Seventh. That after said grant of said right of way and depot grounds shall have been secured, as aforesaid, defendant can construct and build and put in operation its said railroad through said town, and said depot in said town, and can do so within 90 days after said right of way and depot grounds shall have been granted and secured by voluntary conveyances or by condemnation proceedings, as hereinbefore provided for, and said time is reasonably sufficient therefor.

"Eighth. That defendant has heretofore surveyed, located, established, and constructed its railroad within three miles of said town of Sherwood, the county seat of Irion county, without passing through said town, and without establishing and maintaining a depot therein, and that defendant made no efforts to survey, locate, establish or construct its railroad through said town or a depot in said town, although it could have done so at a reasonable cost; but defendant purposely and intentionally constructed its railroad passing said town and within the distance of less than three miles therefrom, and established a station at Mertzon, a new and rival town, about three miles away from said town of Sherwood.

"Ninth. That had defendant surveyed, located, established, and constructed its railroad through said town of Sherwood, instead of where it did construct the same, its said line of railroad would have been about seven-tenths of one mile shorter than its present line, and the cost of expense and maintenance and saving in operation of the line through Sherwood will substantially offset any difference in the cost of construction between said line through Sherwood and defendant's present line, and the difference, if any, between the cost of construction, maintenance, and operation of the two lines is so slight and inappreciable as to be not unreasonable.

"Tenth. That defendant has never surveyed or located any route for its railroad through said town of Sherwood, or any point for a depot in said town, and never gave the citizens of said town, or said town, an opportunity to grant it a right of way through the limits of said town, and sufficient grounds for ordinary depot purposes, although said town and said citizens were ready, able, and willing to do so at all times.

## "Conclusions of Law.

"The court concludes, as a matter of law, that by article 10, § 9, of the Constitution of the state, and by Revised Statutes, art. 4491, the defendant, by constructing its line of railroad within three miles of the town of Sherwood, which is the county seat, was required to pass through said town and establish and maintain a depot therein, there being no natural obstacles preventing, and that it was the duty of the defendant to have made a reasonable effort to have located its line through said town in order to have given the citizens of said town a reasonable opportunity to grant it the right of way through the limits of said town and sufficient grounds for ordinary depot purposes, and that, by reason thereof, defendant has willfully failed and refused to perform a duty enjoined upon it by law, and has subjected itself to the penalties provided for in article 4576, Revised Statutes of the state of Texas, as amended by chapter 100, Acts of the Twenty-Seventh Legislature, p. 265, and that, unless compelled to construct its road through said town and maintain a depot therein, the defendant will not do so, and the writ of mandatory injunction is therefore awarded to compel the performance of this legal duty on the part of the defendant, and the penalty of $2,500 is assessed against the defendant for a willful violation of the laws of this state and failure and refusal to perform a duty enjoined upon it by the laws of this state."

## Opinion.

[1] The first three assignments assail the correctness of the judgment overruling appellant's plea in abatement, which, in effect, set up the pendency of the prior suit in the district court of Tom Green county, heretofore referred to, wherein certain citizens of Sherwood were seeking to compel said railway company to construct its line of railway through the limits of said town and establish and maintain a depot therein. Ar-

ticle 10, § 9, of our state Constitution provides that: "No railroad hereafter constructed in this state shall pass within a distance of three miles of any county seat without passing through the same and establishing and maintaining a depot therein, unless prevented by natural obstacles, such as streams, hills or mountains, provided such town or its citizens shall grant the right of way through its limits, and sufficient ground for ordinary depot purposes."

Article 4491, Sayles R. S., is a literal copy of the above provision. It appeared that the suit pending in Tom Green county district court was brought by and at the instance of certain citizens of Sherwood, and merely sought to compel said railway company to conform to said constitutional requirements; it is therefore contended by appellee that since the parties to this suit and to that are not identical, and that the cause of action asserted therein and that asserted here are not the same, and that the relief sought in the one is different from that sought in the other, said plea was not well taken; citing Langham v. Thomason, 5 Tex. 127; Payne v. Benham, 16 Tex. 364; Cooper v. Mayfield, 94 Tex. 107, 58 S. W. 827; 1 Cyc. p. 21 et seq.

It is said in 1 Cyc. that: "It is a general principle of law that the pendency of a prior suit for the same thing, or, as is commonly said, for the same cause of action, between the same parties in a court of competent jurisdiction, will abate a later suit. The principle upon which pleas of another action pending are sustained is that the law, which abhors a multiplicity of suits, will not permit a debtor to be harassed and pressed by two actions to recover the same demand, where the creditor can obtain a complete remedy by one of them." Page 21. "To sustain the plea of a former suit pending, it must appear that the subject-matter and the relief sought in the second suit are the same as in the first suit. A plea in abatement of another action pending will fail where there is a substantial difference in the relief sought." Id. pp. 27, 28. "If the whole relief sought in the second suit is not attainable in the first, or if the relief which may be given, or the remedies available in the second suit, are more extensive than can be attained in the first, a plea to the second suit of the pendency of the first is not good." Id. p. 29.

[2] Under the above rule, which we think is applicable here, we conclude that the court did not err in overruling the plea in abatement, for which reason we overrule the several assignments complaining of this matter. We think the general demurrer to plaintiff's petition was properly overruled on the authority of Felton v. K. C., M. & O. Ry. Co., supra.

[3] The thirty-eighth assignment urges that the trial court erred in overruling the

defendant's motion to abate, dismiss, or suspend the suit, owing to the fact that, since the trial of the case began, appellant had, at the suit of certain creditors, been placed in the hands of receivers under the control and jurisdiction of the federal court for the Northern district of Texas, contending by its proposition thereunder that where it appears, after the institution of a suit for mandamus or mandatory injunction, and before final judgment, that the physical property of the respondent has been placed in the hands of receivers, and that the respondent is therefore unable to comply with the mandate of the court, the proceedings should either be dismissed or suspended in order to make the receivers parties. Appellee contends, however, that the appointment of the receivers did not oust or interfere with the jurisdiction of the court over the subject-matter, and it was not necessary to make the receivers parties thereto; but it became their duty to make themselves parties to such suit, if they so desired, citing in support of such contention Water Co. v. City of Palestine, 91 Tex. 546, 44 S. W. 814, 40 L. R. A. 203; Reisner v. Gulf, Colorado & Santa Fé Ry. Co., 89 Tex. 656, 36 S. W. 53, 33 L. R. A. 171, 59 Am. St. Rep. 84; City Water Company v. State, 88 Tex. 600, 32 S. W. 1033; Thompson on Corporations, vol. 5, §§ 6894–6896.

In Water Co. v. City of Palestine, supra, Chief Justice Brown, in discussing this subject, says: "This suit was instituted to revoke and set aside the contract between the city of Palestine and the Palestine Water & Power Company, as well as to annul the ordinance which granted to the Water & Power Company the right to occupy its streets, and the state court thereby acquired jurisdiction of the subject-matter before the receiver was appointed by the United States Circuit Court"—holding that it was not necessary to make the receiver a party thereto.

"The mere appointment of a receiver does not suspend the right of action against a corporation itself, unless the proceeding in which the receiver is appointed has resulted in dissolving the corporation, or unless such proceedings have been commenced for the purpose of securing a judicial dissolution of the corporation, or unless the court in which it is commenced enjoins the prosecution of actions against the corporation, pending the determination of the question whether it is to be dissolved. The reason for this conclusion is that the existence of the corporation is not destroyed or even suspended by reason of its property or franchises being held in custody by a court of equity, though the seizure of its property may dispossess it of the means of defending suits, and make it inequitable to allow them to be prosecuted against it." Section 6894, 5 Thompson, Corp.

We think the cases above cited are suffi-

cient authority for our holding that the court did not err in overruling appellant's plea in abatement, based on appointment of the receivers since the filing of this action.

[4] The fourth, fifth, sixth, seventh, and eighth assignments claim that the court erred in holding that the state had the right to institute this suit, insisting that such right was exclusively vested by the Constitution and laws, either in the county of Irion, the town of Sherwood, or the citizens thereof, and was not such a matter of general public concern as would authorize the institution and prosecution of this action by the state. In reply thereto it is insisted by appellee that, since appellant was chartered and acting under and by virtue of the Constitution and laws of the state, it owed a public obligation to the state to perform every duty imposed upon it, either by the Constitution or the statutes of the state, or by the terms of its charter; and this obligation included the performance of all duties, either expressly or impliedly required by said Constitution, statutes, or charter, and that, failing or refusing to perform such public duty, it was the right of the state to compel performance by either a writ of mandamus or mandatory injunction—citing in support of its contention San Antonio Street Ry. Co. v. State of Texas, 90 Tex. 520, 39 S. W. 926, 35 L. R. A. 662, 59 Am. St. Rep. 834; N. P. Ry. Co. v. Washington, 142 U. S. 492, 12 Sup. Ct. 283, 35 L. Ed. 1092; State of Mississippi v. M., J. & K. Ry. Co., 86 Miss. 172, 38 South. 732, 122 Am. St. Rep. 277; N. O., M. & T. Ry. Co. v. Mississippi, 112 U. S. 12, 5 Sup. Ct. 19, 28 L. Ed. 619; Nebraska v. R. V. & Ry. Co., 17 Neb. 647, 24 N. W. 329, 52 Am. Rep. 424; State v. Hartford Ry. Co., 29 Conn. 538; Thompson on Corp. §§ 7, 8, 30; Elliott on Railroads, §§ 638, 639, 640, 641, and authorities therein cited.

In the first case cited, Chief Justice Gaines used the following language: "It is a well-settled doctrine that a corporation may be compelled by writ of mandamus to perform a duty imposed by statute. The duty need not be expressed; it may be implied. Clearly, when it appears by fair implication from the terms of its charter, it is as imperative as if the obligation were expressed." The only exception to this rule seems to be as stated by Judge Gaines that where the charter confers a mere permissive right to do a thing, as distinguished from the command to do so, such corporation cannot be compelled by mandamus to perform such permissive obligation.

While it cannot be doubted in the present case that the town or its citizens, as held in Felton v. K. C., M. & O. Ry., supra, would have the right to institute the suit to compel the railway company to comply with its constitutional obligation, yet it seems to us that there can be no question but what the state would have the absolute right also to enforce such obligation against the company, in the event of a failure or refusal on its part to comply therewith. The language of the Constitution is a direct and positive command, requiring the company to pass through any county seat and establish a depot therein, where it runs within three miles thereof, unless prevented by natural obstacles, or unless the citizens should fail to grant the right of way through its limits, and furnish sufficient grounds for ordinary depot purposes. The state is certainly interested in the enforcement of its Constitution and laws; and a failure on the part of the company to comply with its mandates justifies, in our judgment, the action taken by it.

In the case of the State of Mississippi v. M., J. & K. Ry. Co., supra, 86 Miss. 200, 38 South. 739, 122 Am. St. Rep. 277, where the same question was raised, the court said: "We think it unnecessary to discuss the contention that the state of Mississippi is not a proper party to a suit of this kind. The state is always a proper party to a proceeding instituted to protect the rights of the public and to finally terminate a willful ignoring of its duties under the statutes of the state, and a persistent violation of its charter powers by a corporation of a quasi public nature."

Believing that the state had the right to prosecute the suit under the law, we overrule each of these assignments.

[5, 6] The ninth and tenth assignments urge that the citizens of Sherwood had by contract waived their right to require appellant to pass through said town and establish a depot therein, for which reason it is now contended that appellant cannot be required to construct its line into and through said town, and build and maintain a depot therein. It appears that in 1902 the citizens of Sherwood, being anxious to induce appellant to abandon consideration of what was known as the Middle Concho route, at the instance of the agents of appellant, called a mass meeting of its citizens to consider a proposition submitted to them by said company. Upon the assembling of said mass meeting, its chairman stated the proposition of the company to be that, if the citizens of Sherwood would grant it a right of way through Irion county, free of charge, it would construct its line of railway through said county, passing the town of Sherwood on the west side of Spring creek, establishing a depot at the nearest point to said town, which was within 1¼ miles thereof. This proposition was voted upon and unanimously accepted by such meeting; a committee of citizens was appointed for the purpose of securing such right of way, who, it seems, made a written contract with the company, obligating themselves to furnish said right of way, wherein the company bound itself to construct the road as above indicated; but there was no clause therein obligating said company to

establish and maintain a depot at the nearest practicable point to said town. The right of way contemplated was thereafter obtained by the citizens and tendered to said company, who subsequently constructed its road thereover; but said company has never at any time established or maintained a depot, as contemplated by the resolution adopted at said mass meeting, but has established and is maintaining a depot at Mertzon, some three miles distant from Sherwood, where a rival town has sprung up. It further appears that said town of Sherwood had a population of about 400 citizens, only 35 or 40 of whom participated in said mass meeting. The contract above alluded to further recited, as a consideration for its execution, that, on account of natural obstacles, it was impracticable for said railway company to construct a line of railway through said town.

We believe that appellant's contention is not sound and should be overruled, because, first, we do not believe that it was within the power of said mass meeting of citizens to waive the constitutional and statutory requirement on the part of said railway company. Besides this, even if they had such power, then neither said citizens nor the state could be bound thereby, in the absence of a showing that the company had performed the obligations imposed by the contract. It clearly appears that said depot was never located as contemplated by said contract; and it cannot be urged that the omission to incorporate this feature in the contract would justify the company in failing to establish a depot, as contemplated by the agreement, because it had knowledge of such resolution and was a party thereto, for which reason the committee appointed by said mass meeting was without authority to bind such meeting by contract, not embracing the entire proposition submitted to and passed upon by it. The railway company having failed to perform its part of such contract, we think the citizens of the town were not bound thereby. At any rate, the state was not a party to such agreement, and is not restricted in its rights thereby.

[7, 8] More than four years prior to the institution of this suit, appellant filed profiles of its right of way in the county clerk's office, showing that it would pass along its present location within three miles of the town of Sherwood, for which reason it contends that its plea of the statute of four years' limitation was improperly overruled, and this point is the basis of its twelfth assignment. We cannot agree with this contention. Notwithstanding the filing of its profiles, as required by statute, no limitation could begin until the road actually passed within three miles of the town, which did not occur until May, 1911, a few months prior to the institution of this suit, for which reason said plea was properly overruled. Apart from this, limitation does not run against the state.

[9] The question as to whether there were any natural obstacles, such as would prevent the railway company from constructing its road into and through the limits of said town, was one of fact; there being ample evidence to support the conclusions of the court in this respect. Therefore the thirteenth assignment of error, complaining of the ruling of the court in this regard, is overruled.

[10] It is contended on the part of appellant, by its fourteenth, fifteenth, and sixteenth assignments of error, that appellee, over appellant's objection, was allowed to make a collateral attack upon the incorporation of the town of Sherwood by testimony of certain witnesses, to the effect that the same included areas of farming land, not permitted to be embraced within said incorporation. It appears that the town of Sherwood, including Sherwood Heights, through which the railroad ran, was incorporated in 1907, and that said incorporation was dissolved in May, 1910. The railway company made its permanent survey on the west side of Spring creek in 1903, and files its profiles thereof. The road was actually constructed in 1911. The mass meeting of citizens was held in 1902. So it seems that there was no incorporation in 1903, when the survey was made, and such survey, of course, at said time, did not run through the town as it then existed, or as it now exists. There was no incorporation in 1911, when the road was actually constructed; but, between the time of the survey and the time of such construction, the town was incorporated, for which reason we are constrained to believe that, if error is shown, it is entirely harmless, and could in no way prejudice appellant's rights. We therefore overrule each of these assignments. This disposes likewise of the seventeenth and eighteenth assignments.

[11] The nineteenth, twentieth, twenty-first, twenty-second, twenty-third, twenty-fourth, twenty-fifth, twenty-sixth, and thirty-second assignments of error are based on the contention that the court erred in rendering a conditional judgment, because the citizens of Sherwood are not made parties thereto. It is urged on behalf of appellee that these assignments should be disregarded, because the same are too general, and because no sufficient statement is made thereunder, as required by the rules to enable the court to pass upon them. We are inclined to think that a strict enforcement of the rules would justify disregarding these assignments for the reasons stated; but, overlooking them, we think that the court committed no error, as there insisted. It is true that the judgment is conditioned upon the performance of certain acts and requirements on the part of the citizens of Sherwood, and it is also true that they are not made parties to this suit; but there is, in fact, no judgment rendered against said citizens. Such conditions, im-

posed by the judgment upon the citizens of Sherwood, are the measure of appellant's obligation and duty under the judgment. A failure to perform such conditions on the part of said citizens operated to release appellant from its requirements. We therefore fail to see any merit in appellant's contention, and believe that the judgment was not only proper, but the only judgment that could have been rendered under the law and the facts.

[12] It was alleged by appellee that on June 6, 1910, William Lackey, and certain other citizens of Irion county, executed a bond obligating themselves to furnish approved right of way deeds to the railway company, and also deeds to grounds for depot purposes in the town of Sherwood, providing that. in cases where deeds could not be obtained, they would pay the costs and expenses incident to condemnation of the right of way for the railway, which bond it is alleged was tendered to A. M. Denny, assistant right of way and tax agent of appellant. It appeared, however, that, while this bond was mailed to said Denny, yet it was never received by him; but on the trial said Lackey and others were permitted to testify as to its contents, over the objection of appellant, which action of the court is complained of as error and is the predicate of the twenty-seventh and twenty-eighth assignments. Holding, as hereafter appears, that the railway company was bound to take the initial step and designate the right of way through the town, before the citizens were required to tender or grant same, we think the action of the court as complained of, if error, was harmless, and therefore overrule these assignments. This likewise disposes of the twenty-ninth assignment.

[13] R. D. Parker, civil engineer for the Railroad Commission, was permitted to testify, over objection of appellants, that he had gone over the ground described, and that there were no hills, streams, or mountains that would prevent the defendant railway company from building a line of railway through and to the town of Sherwood, as described, and connect with the line of railway now built and in operation; that he had examined the maps and profiles that were submitted by the officers of the defendant to the Commission. These maps and profiles show no streams, hills, or mountains that would be obstacles to prevent the defendant company building its line of railway to and through the town of Sherwood and establishing a depot therein. Appellant objected to this evidence on the ground that the same was the expression of the opinion of the witness upon a mixed question of law and fact, and invaded the province of the court. This objection was overruled, which ruling is assigned as error. This witness having been shown to be an experienced and skilled civil engineer, and to have gone over the ground, and to have examined the maps and profiles thereof, it was permissible for him to express an opinion upon the subject, for which reason we overrule the thirtieth and thirty-first assignments. Besides this, the witness John Lackey, a civil engineer, had been allowed to give practically the same testimony without objection.

[14] The thirty-third assignment is overruled, because, first, it is not presented in accordance with the rules governing procedure in this court in this: That the same is not followed by an explanatory statement. Besides, we think it sufficiently appears from the allegations of the petition that there was a demand by the citizens of the town of Sherwood upon appellant to construct and operate its road into said town, and a tender of right of way, as well as depot grounds therefor, prior to the time that the road passed said town.

[15] The petition, having alleged that it was the duty of appellant, before passing within three miles of the county seat of Irion county, to survey, locate, and establish a right of way and depot grounds in said town, and showing a willful failure on the part of appellant so to do, sought by mandamus or mandatory injunction to compel a performance of such duty. Appellant excepted to said petition upon the ground that the Constitution and laws imposed no such duty upon it, which objections were overruled by the court and are made the ground of the thirty-fifth and thirty-sixth assignments. By its second proposition thereunder, appellant, in effect, urges that the requirement that a railway company make a survey of a line and depot grounds in and through a county seat is not necessary to the enforcement of the provisions of article 9, § 10, of the Constitution; and it is not within the province of the court to read into the provision by implication any such requirement on the part of the railway company. We differ from appellant in this contention, and believe that the court properly overruled these exceptions. When a railway company determines to pass within three miles of a county seat without entering said town, we think, before it is justified in doing so, it becomes its duty to survey its line into and through said town and select a site for depot grounds therein, unless it is prevented from so doing by natural obstacles, such as mentioned in said provision of the Constitution. Upon so doing, then it becomes the duty of the citizens, on request of the company, to furnish, free of charge, such right of way and depot grounds to the company. A failure on their part to do this would absolve the company from any liability under this provision. The duty is not imposed upon the citizens in the first instance to tender or grant a right of way through, and depot grounds in, such town. It seems to us that

this construction is required not only by the letter, but by the spirit, of the Constitution upon this subject. To hold otherwise would compel the citizens, in advance of a knowledge of where the company desired to build, to buy, pay for, and tender a right of way and depot grounds, that in all probability would not meet with the approval of the company. Besides this, the citizens of the town have no right of eminent domain; and, if they could not secure such right of way and depot grounds by voluntary conveyances, they would be unable to tender same. See Miller v. G., C. & S. F. Ry. Co., 65 Tex. 659.

The Constitution of Mississippi, § 187, provides that: "No railroad hereafter constructed in this state shall pass within three miles of any county seat without passing through the same, and establishing and maintaining a depot therein, unless prevented by natural obstacles:. Provided such town or its citizens shall grant the right of way through its limits, and sufficient grounds for ordinary depot purposes." Construing said provision, the Supreme Court of said state in the case of State of Mississippi v. M., J. & K. Ry. Co:, supra, 86 Miss. 192, 38 South. 736, 122 Am. St. Rep. 277, uses the following language: "It must be noted that what we have said about the duty of a railroad company to build its line through a county seat is conditioned that the town or its citizens shall grant a right of way through its limits and sufficient grounds for ordinary depot purposes. But a grant presupposes a request. The duty is imposed upon a railroad company of building its line through every county seat which it passes within three miles of. It can excuse itself for nonperformance of this duty in two ways only: By showing that it was prevented by 'natural obstacles'; by showing that the town or citizens refused to make the grant mentioned in the Constitution. The initiative must be taken by the railroad company. No action is incumbent on the town or its citizens until the railroad company has evidenced an intention of locating its line within three miles of the town, and has expressed a desire to receive the grant from the town. The Constitution says to the railroad companies, 'Ask, and ye shall receive, or in default thereof, you may locate your line where you will.' But an asking and refusal are conditions precedent to the lawful construction of a line within the distance mentioned, and without passing through a county seat. We make these latter observations to prevent the possibility of misconception of our meaning, and to dispose at the same time of the contention of appellees that they were absolved of all duty in this regard, because they were not tendered a grant of right of way and depot grounds."

[16] We hold, therefore, that the survey of its line through the town of Sherwood, and the selection of depot grounds therein by the company, and a refusal on the part of the citizens to grant same, free of charge, to the company, became and were conditions precedent to its right of passing within three miles of said town without entering therein; and, a willful failure on the part of the company in passing said town, without a compliance with such conditions, being shown, the court was authorized, and it became its duty, by mandatory injunction, to enforce obedience on the part of the company to such constitutional requirement; and hence the court did not err in overruling the exceptions interposed by appellant.

[17] Notwithstanding appellant's road may have passed by the town without entering therein, prior to the filing of this suit, yet, if it had violated the provisions of the Constitution and law upon this subject, it seems to us, irrespective of the fact that its road had passed the town, that appellee was entitled to a writ of mandamus, or a mandatory injunction, to enforce the performance of its duty in this regard; and therefore the court did not err in refusing to sustain appellant's special exception addressed to the petition on this ground, as urged in the thirty-fourth assignment.

We overrule the thirty-seventh assignment, insisting that the writ should not issue for the reason that the evidence showed that the company was not financially able to construct said road into the town of Sherwood, because the contrary, we think, is abundantly established by the record.

[18] We disagree with appellant in its contention that the statute authorizing the recovery of the penalty in this character of case is unconstitutional, and hold that there was ample evidence to warrant the judgment rendered, and therefore overrule its thirty-ninth assignment.

Finding no error in the judgment of the trial court, the same is in all respects affirmed.

Affirmed.