## THE STATE v. LOCKETT, Appellant.

### Division Two, May 13, 1902.

1. **Assault:** INTENT TO KILL: STATEMENTS OF ACCUSED: RES GESTAE. In a prosecution for assault with intent to kill, it appeared that defendant and C. had had a dispute, which was resumed the next day in a saloon. There C. threw pop bottles, and defendant used a revolver, firing four shots, two of which took effect in C.'s arms. C. then drew a large knife, and defendant ran out of the back door, through an alley, to his own home, closely followed by C. Within three feet of the house door C. slipped and fell, thus giving defendant a chance to spring in and lock the door. *Held,* that defendant's testimony that immediately on entering the house he showed that he had another cartridge in the gun, and said, "I could have turned around when C. fell and put the gun right to his head, and killed him, but I didn't want to be no murderer, and I wouldn't shoot him with the last load," was admissible as a part of the *res gestae,* and as bearing on the questions of intent to kill and self-defense.

2. **Appellate Practice:** MOTION FOR NEW TRIAL: NEWLY-DISCOVERED EVIDENCE: BILL OF EXCEPTIONS. Where, in a motion for new trial on the ground of newly-discovered evidence, there is nothing to show in what such evidence consisted, and no affidavits in support of the motion are preserved in the bill of exception, the ruling on such motion can not be considered on appeal.

3. **Criminal Law:** WITHDRAWAL OF PARTY TO CONFLICT: SELF-DEFENSE. Where a party to a conflict withdraws in good faith, intending to abandon it, his right of self-defense will revive, notwithstanding he began the conflict with a felonious or murderous design.

4. ———: QUESTION BY COURT. On a criminal trial the court has the right to question or cross-question any witness, within such bounds as control attorneys in similar interrogations.

State v. Lockett.

5. ——: EVIDENCE OF SPECIFIC INSTANCES OF CRIME: REPUTATION. On the trial of one accused of crime, evidence of specific instances of his moral dereliction can not be properly adduced, either to tear down or build up the fabric of general reputation.

Appeal from St. Louis City Circuit Court.—*Hon. H. D. Wood,* Judge.

REVERSED AND REMANDED.

*H. W. Dalton* and *Joseph S. McIntyre* for appellant.

(1)   The newly-discovered evidence was not cumulative, no evidence of threats having been produced at the trial, coming to defendant after the trial, and no failure of diligence of defendant appearing.   Even if it be doubtful how such evidence would affect the result in a new trial, the motion should be granted.   State v. Bailey, 94 Mo. 311; State v. Murray, 91 Mo. 104; State v. Downs, 91 Mo. 19; Wharton Crim. Evid. sec. 757.   (2)   (a) The law is plain that self-serving declarations are admissible if part of the *res gestae,* and it is not necessary that they should be precisely concurrent with the act.   It is enough if they spring from it, and are made under circumstances which preclude the idea of design.   Wharton Crim. Evid., par. 691; Bish. New Crim. Proc., sec. 1086, par. 1 and 2.   (b) When it is necessary to inquire into the intention of the person who did the act, proof of what the person said at the time is admissible as part of the *res gestae,* to show its true character.   Brumley v. State, 21 Texas App. 222.   Such declarations are admissible whether for or against the party making them.   State v. Ware, 62 Mo. 597; State v. Evans, 65 Mo. 574; State v. Anderson, 89 Mo. 312.   Statements made by defendant a few minutes after the conflict, and near the place and presence of eyewitnesses are admissible as part of the *res gestae.*   Little v. Com., 25 Gratt. (Va.) 921; State v. Brown, 64 Mo. 367; Wharton Crim. Evid., par. 262, 263; Rouch v. Railroad, 1

Vol 168 mo—31.

Q. B. 51; State v. Graham, 46 Mo. 490; State v. Matthews, 20 Mo. 55; O'Shields v. State, 55 Ga. 696; Brunet v. State, 12 Texas App. 521. Declarations are now admitted as *res gestae* even when perceptible time has elapsed after the main transaction, provided they were made under the influence of the principal transaction and are so connected therewith as to characterize or explain such transaction. The ancient rule was not so, but this has been considerably modified. If not mere narrative of a past occurrence but declarations of a past occurrence, made under such circumstances as will raise a reasonable presumption that they are the spontaneous utterances of thoughts created by, or springing out of, the transaction itself, and so soon thereafter as to exclude the presumption of premeditation or design, they will be admissible as part of the *res gestae.* Stevens v. Walpole, 76 Mo. App. 213; 21 Am. and Eng. Ency. Law, p. 101. (3) The court erred in taking witnesses for the defense out of the hands of defendant's attorney, time and again, examining them at great length as to matters not in evidence, and in such a manner as to prejudice the jury against defendant and such witnesses. An examination of the transcript will show that the trial judge did this on several occasions during the production of testimony for the defense, several questions put by the court apparently conveying the impression of sarcasm, and tending to hold the witness up to ridicule.

*Edward C. Crow,* Attorney-General, and *Sam B. Jeffries,* Assistant Attorney-General, for the State.

(1) The newly-discovered evidence is not set out in the motion; nor does the motion show diligence in securing all the evidence. It fails to show relevancy, or that it would not be cumulative, or from whom it was expected to obtain it. State v. Cushenberry, 157 Mo. 168. (2) It is true in some cases, statements made by defendant immediately af-

ter the difficulty are admitted as a part of the *res gestae.* If the declarations spring from the act and are made under circumstances which preclude the idea of design, they are admissible. Such is not the case here. The true test is, were the declarations the facts talking through the party, or the party talking about the facts? Wharton's Crim. Evidence, p. 592. When the declarations are distinguishable in point of time, or are open to the suspicion of being a part of the defendant's plan of defense, they must be ruled out. Wharton's Crim. Evidence, p. 592; State v. Brown, 64 Mo. 367. (3) The court had a right under the law to ask such competent questions as he might choose in order that all of the facts might go to the jury. It was also essential to defendant's rights to have all the evidence and circumstances properly before them. (4) The trial court has a right to know the specific ground of objection, and a general objection may be disregarded. State v. Adams, 108 Mo. 208; State v. Robinson, 117 Mo. 649.

### FIFTH INSTRUCTION.

The fifth instruction, referred to in the opinion, is as follows "Fifth. Upon the question of self-defense the court instructs you as follows: If you believe and find from the evidence that at the time the defendant shot said Carter he had good reason to believe and did believe that said Carter was about to immediately inflict upon him some great personal injury, and he shot him for the purpose of averting such apprehended injury, then you must acquit him on the ground of self-defense. Whether he had good reason to believe and did believe that said Carter was about to kill him, or to immediately inflict upon him some great personal injury, is for you to determine, and if you find and believe from the evidence that he did not have reasonable grounds for so believing, you can not acquit him on the ground of self-defense. The court further instructs you that the right of self-defense does not imply the right of attack, and a plea of jus-

tification in self-defense can not avail in any case where a
person provoked a difficulty, or begins a quarrel with the pur-
pose of taking the life of another or doing him some great
bodily harm.    Therefore, if you believe from the evidence
that the defendant sought the difficulty on the occasion shown
in the evidence, for the purpose of wreaking his malice upon
said Carter, or of shooting him, or of doing him some great
personal injury, then there is no self-defense in the case, and
the danger in which the defendant may have found himself
during such difficulty would not justify him in shooting said
Carter."

SHERWOOD, P. J.—Assault with intent to kill will-
fully, on purpose and of his malice aforethought George Car-
ter, a negro, by shooting him with a pistol, was the charge
which the grand jury preferred against Moses Lockett, also
a negro; and on such charge the traverse jury found him guilty
of such assault, and assessed his punishment at imprisonment
in the penitentiary for the term of two years; hence, this
appeal.

The circumstances which led to the shooting were in sub-
stance these:    Defendant and Carter were both expressmen;
rivals in that business, and stationed at the west end of Union
Station on Twentieth street in St. Louis.    An altercation
sprang up between them on Saturday, December 29, 1900,
about one or the other of them having prevented the other
from securing the hauling of a piece of baggage a stranger
wished hauled, and harsh words were interchanged.    On the
thirty-first of December, or Monday evening, the quarrel was
renewed in a near-by saloon, when for words were soon substi-
tuted full soda pop bottles and bullets.  There is competition in
the testimony as to whether a bottle or a bullet was the missile
that opened the fray, but so it was, that several soda pop bot-
tles were thrown at defendant by Carter and several bullets
were fired by the former at Carter, two of which bullets took
effect in each arm of Carter's though not, it seems, breaking

the bones. When defendant had fired four shots at his jacu-
lating enemy, he retreated rapidly through the back door of
the saloon, with Carter, his spring-back knife with a long blade
drawn, in his hand, in full pursuit; indeed, it seems the knife
was drawn before the last shot was fired. At any rate, Carter
ran after defendant, the latter running, and Carter pursuing
him, close on his heels and cutting at him as he ran up an alley
on which the back door of defendant's house abutted; when
Carter got close on to defendant, within a step of him, when
Carter's feet slipped on some ice within about three feet of
that door, and he fell, and this gave defendant a chance to
spring through the door, when it was slammed to and locked
by some member of defendant's family in order to prevent
Carter from gaining access to the house.

Defendant testified when he escaped from Carter by
springing through the door, just as Carter fell that: "When I
went in the house I says 'Now, people,' I says, 'I'm in this
trouble with this man, now look, all of you can see here's one
more cartridge in the gun,' and I says, 'I could have turned
around when Carter fell and put the gun right to his head and
killed him,' but, I says, 'I didn't want to be no murderer and
I wouldn't shoot him with the last load."

"The court: Objection ought to be made to all this in-
competent testimony. It is improper and self-serving testi-
mony, and it may be stricken out, in regard to what he said
about killing Carter and that he still had one cartridge in his
pistol."

"To which ruling of the court the defendant then and
there duly excepted."

Before this ruling had been made, it had been attempted
by counsel for defendant to establish by Charles W. Red, who
went into the house just after defendant rushed in there, that
defendant made a statement showing that there was another
bullet in his pistol, and that as he could have killed Carter
with that he had no intention of killing him; but this was

ruled out on the ground that it was a self-serving statement and therefore not competent, and exception was saved.

The propriety of this ruling is now for examination. The basis for the assertion of the admissibility of such testimony is that it is part of the *res gestae*. The ground of its rejection by the court was that it was self-serving, and therefore inadmissible. But the rule does not always hold that declarations are to be rejected solely on the ground of being self-serving. If part and parcel of the *res gestae,* they are competent, and therefore admissible, whether against or in favor of the interest of the declarant. Self-serving statements are usually made after the main fact has transpired, but this alone will not cause their rejection if such statements are so connected with the main act as to elucidate the *animus* of such act, and to show that such statements were the natural concomitants of, and emanations from, such main and controverted act.

In State v. Gabriel, 88 Mo. 631, it is said: "The doctrine is well settled that whatever words depict the character of the principal fact, shed upon it the proper light when it is brought before the camera of judicial investigation, are 'verbal acts, indicating a present purpose and intention, and are, therefore, admitted in proof like any other material facts' (1 Grlf. Evid., sec. 108, and cas. cit.).

"The *res gestae* in larceny is not restricted to that limited period of time when the fingers reach out and grasp the article in question, any more than are the *res gestae* confined in a case of homicide to the knife thrust which loosens the 'silver chord' of life. The *quo animo,* and all actions and words whereby that is demonstrated, form part of the *res gestae,* and thus become admissible (Garber v. State, 4 Coldw. 161, and cases cited)."

An author of distinction says: "Nor are there any limits of time in which the *res gestae* can be arbitrarily confined. They vary, in fact, with each particular case." "The test

is, were the declarations the facts talking through the party, or the party's talk about the facts? Instinctiveness is the requisite, and when this obtains, the declarations are admissible." [Whart. on Crim. Ev. (9 Ed.), secs. 262, 691.]

Alluding to the rule excluding hearsay, an author of eminent and acknowledged authority says: "The principle does not extend to the exclusion of any of what may be termed real or natural facts and circumstances in any way connected with the transaction, and from which any inference as to the truth of the disputed fact can reasonably be made." [1 Starkie's Ev. (6 Ed.), 65.]

A text-book of conceded merit, says:

"The rule is that evidence of words or acts may be admissible (notwithstanding the general rule against derivative evidence) on the ground that they form a part of the *res gestae,* provided that the act which they accompany is itself admissible in evidence, and that they reflect light on or qualify that act. But they must be so connected with the main fact under consideration as to illustrate its character, to further its object, or to form in conjunction with it one continuous transaction. If declarations are made some time before the act and stand alone by themselves, they are not within the rule and are inadmissible. If they amount to no more than a mere narrative of a past occurrence or of an isolated conversation held, or an isolated act done at a later period, they are not admissible; *but if declarations of a past occurrence are made under such circumstances as will raise the reasonable presumption that they are the spontaneous utterances of thoughts created by, or springing out of the transaction itself, and so soon thereafter as to exclude the presumption that they are the result of premeditation and design,* they will be admissible as part of the *res gestae."* [21 Am. and Eng. Ency. of Law, pp. 99, 100, 101 and 102.]

"To make declarations a part of the *res gestae* they must be contemporaneous with the main fact; but in order to be

contemporaneous they are not required to be precisely concurrent in time. If the declarations spring out of the transaction, if they elucidate it, if they are voluntary and spontaneous, and if they are made at a time so near to it as to preclude the idea of deliberate design, they are then to be regarded as contemporaneous." [State v. Garrand, 5 Oregon 216.]

A striking and illustrative instance of self-serving statements becoming admissible as evidence is afforded by the case of a larceny, which though long past, if it really occurred at all, where what a defendant said immediately upon being charged with the theft, when his trunk was searched, was held part of the *res gestae;* admissible in evidence in his favor, as well as adversely to him. And even the manner of the defendant, was held as part of the *res gestae,* as expressive of his willingness to have his trunk opened. [State v. Castor, 93 Mo. loc. cit. 251-2; Whart. Crim. Evid. (9 Ed.), sec. 761; 2 Bishop's New Crim. Proc., sec. 746.]

In the present case, not guilty was pleaded, as well as self-defense, and on either branch and especially the latter, the *quo animo* with which he fired the shots, and with which he refrained from firing the last shot in his pistol, were clearly competent evidence, since defendant's statements appear to have been made almost at the time he sprang through the door, without opportunity for premeditation or concoction.

For these reasons the exceptions to the exclusion of defendant's testimony on the point offered, was well taken, and error occurred in such exclusion.

As to the newly-discovered evidence matter, there is nothing contained in the motion for new trial as to, or in what, such evidence consisted, nor are the affidavits offered in support of such alleged evidence, if any were offered, preserved in the bill of exceptions. So that that matter can not be considered.

There were no exceptions saved to the instructions given, and therefore, no error could be validly assigned on any lack

·of sufficiency they exhibit; but inasmuch as this cause must be retried, it is not improper to say that though the instructions, speaking generally, are correct, yet the fifth instruction (which will accompany this opinion), leaves out an important element in this case, to-wit: The evidence tends to show that defendant withdrew from the conflict in good faith, intending to abandon it, and where this is the case, his right of self-defense will *revive* upon such withdrawal being made as aforesaid, notwithstanding he began the combat with a felonious and murderous design.   This point is abundantly settled by authority.   [State v. Partlow, 90 Mo. loc. cit. 627, 628; and authorities cited; State v. Cable, 117 Mo. loc. cit. 385.]

The trial court had the undoubted right to question or cross question any witness, provided this were done within such bounds as control attorneys in similar interrogations. [State v. Pagels, 92 Mo. 300.]

Though no exceptions were saved on the point of questioning witnesses respecting the reputation of defendant, yet such examination was abnormally faulty.   It seems necessary and at the same time unnecessary to say (because our remarks on this point go unheeded), that evidence of specific instances of moral dereliction can not be *properly* adduced in evidence, either to tear down or build up the fabric of general reputation.   [State v. Prendible, 165 Mo. loc. cit. 359.]

For the error first aforesaid, we reverse the judgment and remand the cause.   All concur.