## 12086

### HODGE v. DeLaine

·(135 S. E., 857)

1. Interest.—Compound interest is not favored and will be allowed only where clearly stipulated.

2. Infants.—Though appellants claim error as to only part of overcharge, where rights of infant are concerned, entire erroneous overcharge will be corrected.

3. Mortgages.—Payments by volunteers to mortgagee or his agent must be credited on mortgage debt.

4. Executors and Administrators.—Administrator of mortgagee having ratified payments by volunteers under unauthorized agreement with mortgagee's agent, payments must be credited on mortgage debt.

5. Payment—Money Paid.—Where infant heir of mortgagor insists on application of payments made by strangers to mortgage debt, he must be held to have ratified payments and is accountable therefor.

Before Wilson, J., Clarendon, May, 1925. Judgment modified.

Action by E. D. Hodge, Administrator, against H. C. DeLaine, Administrator, and others. From the decree, both parties appeal.

*Mr. Fred Lesesne* for plaintiff-appellant.

*Mr. Charlton DuRant,* for defendants-appellants, cites: *Payment on mortgage debt by volunteer and acceptance by mortgagee:* 23 L. R. A., 120.

October 26, 1926.

The opinion of the Court was delivered by Mr. Justice Cothran.

This is an action to foreclose a mortgage upon real estate, executed by one John Gill, colored, as security for a note executed by him to the law firm of Purdy & O'Bryan, at Manning, S. C., and assigned by them to Miss Maybin Hodge, whose money said firm had received from her for

Note: On effect of payment of a debt by a volunteer or stranger to the original undertaking, see note in 23 L. R. A., 120; 21 R. C. L., 31.

investment. The note and mortgage were dated December 3, 1912; the note was for $550.00, payable at a time not stated in the record for appeal, with interest from date at the rate of 8 per cent. per annum, the interest payable annually, and, if unpaid, to bear interest at the same rate as the principal, with 10 per cent. attorney's fee.

The mortgagor, John Gill, died in the year 1914, leaving as his only heir at law, an infant son, Jerome Gill, then about four years of age.

It is conceded that the amount due upon the note and mortgage on December 3, 1916, two years after the death of John Gill, the mortgagor, was $550.00. It does not appear to or by whom the payments of interest were made between the date of John Gill's death and December 3, 1916.

It appears, though not at all clearly, that, at some time after the death of John Gill, two colored women, Ella Epperson and Stella Jenkins, by some arrangement between the relative of John Gill and Mr. O'Bryan, a member of the firm of Purdy & O'Bryan, went into possession of the house and lot covered by the mortgage and undertook to pay off the mortgage, under the assumption that, when the mortgage was paid off, they would be entitled to at least a part of the property. . The manual possession of the note and mortgage was retained by Mr. O'Bryan for Miss Hodge.

On May 28, 1921, Ella Epperson paid to O'Bryan $100, and he gave her a receipt stating that it was a payment "on the Gill mortgage."

On July 11, 1921, Stella Jenkins made two payments to O'Bryan, one of $40.00 and the other of $60.00, and he gave her receipts stating that the payments were "on Gill bond and mortgage." It does not appear that these two women, Ella Epperson and Stella Jenkins, are related, or that there was any community of interest between them, or that either is related to the family of John Gill, the mortgagor, or what the agreement between them and O'Bryan was. Apparently, as is stated in the argument of counsel for Stella Jenkins:

"They were trying to pay the mortgage and get in return a part of the land."

Stella Jenkins appears to have gone into possession of, at least, the house, rented it, and collected the rents up to the time the house was partially destroyed by fire and rendered unhabitable. None of these payments was turned over by O'Bryan to Miss Hodge. She died July 16, 1923, and the plaintiff qualified as administrator of her estate in September following. He secured possession of the bond and mortgage from O'Bryan and deposited them in bank, as he was required to do by the surety company which went upon his administration bond.

After this, the plaintiff went to O'Bryan for an accounting of the money which Miss Hodge had turned over to him for investment. He was told that all of it except $600.00, for which he was personally accountable, was in the John Gill bond and mortgage, and that not a cent had been paid upon it. He testified that he had never given O'Bryan any authority to collect any part of the Gill mortgage.

R. A. White, colored, the father of Stella Jenkins, testified that some time in January, 1924, the plaintiff came to him in reference to the Gill mortgage and told him that the matter had to be settled up; that O'Bryan was threatening to sell the property without a formal order of Court; that he (Hodge) did not know of any such law, "but advised me to at once go and see Mr. O'Bryan, because if Mr. O'Bryan could not settle the matter up he would have to get another lawyer to do so"; that he (White) then went to see O'Bryan and told him that he was unable to settle the matter up; that O'Bryan later 'phoned him that Hodge was pressing him and that he would have to have some money at once; said he wanted $400.00; that O'Bryan then came to his (White's) office with some papers, "a mortgage of somebody's," and said that he would be prepared to "complete Stella's papers" in a day or two; that he later went to

O'Bryan's office and paid him $200.00, for which O'Bryan gave him a receipt dated February 26, 1924, stating that the $200.00 was "part payment on John Gill's house and lot bargained to Stella Jenkins, less a lot 20x100 feet reserved." This, like the payments made by Ella Epperson and Stella Jenkins, never reached the plaintiff.

In January, 1925, the plaintiff instituted this action to foreclose the John Gill mortgage. The parties defendant were DeLaine, administrator of the estate of John Gill, Jerome Gill, the infant son of John Gill, Stella Jenkins, and certain other defendants, who, I assume, are lien creditors. Ella Epperson was not made a party.

Neither the pleadings nor the substance of them are set forth in the transcript of record. I gather from the circuit decree and the arguments of counsel that the defendants, Jerome Gill and Stella Jenkins, contend that the Gill mortgage should be credited with the payments above referred to, made by Ella Epperson, Stella Jenkins, and R. A. White for Stella Jenkins, aggregating $400.00.

The case was referred to the Master, who filed a report disallowing the credits of $400.00 and recommending a decree of foreclosure and sale for the amount due upon the bond as of December 3, 1916, with interest as claimed, and 10 per cent. attorney's fee.

Upon exceptions to this report, his Honor, Judge Wilson, by a decree dated May 9, 1925, reversed the report of the Master and allowed the credits claimed. He found that the balance due upon the bond, as of May 5, 1925, including attorney's fee, was $584.81 and he signed a decree of foreclosure and sale.

From this decree, both the plaintiff and the defendants, Stella Jenkins and Jerome Gill, by guardian *ad litem,* have appealed. The plaintiff upon the ground of error in allowing the $400.00 of credits claimed, and the defendants upon the ground of error in the calculation of the Circuit Judge after allowing the credits, contending that the amount

should have been $494.52 instead of $584.81, too much by $90.29.

It will be convenient to first dispose of the appeal of the defendants claiming that there is an error of $90.29 in the calculation of the Circuit Judge against them.

The terms of the note were:

"With interest from date at the rate of 8 per cent. per annum, the interest payable annually; and, if unpaid, to bear interest at the same rate as the principal, with 10 per cent. attorney's fees."

It is a question in my mind whether this provision calls for compound or annual interest; but, as there is no claim on the part of the plaintiff to compound interest and as the Court does not favor it unless clearly called for by the contract, I shall adopt the rule of annual interest in the calculation. The balance due upon the note and mortgage, after crediting the payments made by the several parties, aggregating $400.00, is $561.14, as of the date of the decree, May 5, 1925, to which must be added attorney's fee of $56.11, total $617.25; and from which should be deducted "insurance paid under former decree, $364.84," leaving balance due of $252.41, instead of $584.81, as decreed.

I have arrived at this conclusion by the following calculation:

Interest installment, due December 3, 1917........$ 44.00
Interest on it to May 28, 1921...................  12.26
Interest installment, due December 3, 1918........  44.00
Interest on it to May 28, 1921...................   8.74

                                                 $109.00
Credit May 28, 1921............................. 100.00

Balance due on interest..........................$  9.00
Interest on this balance to July 11, 1921..........    .86
Interest installment due December 3, 1919........  44.00
Interest on it to July 11, 1921..................   5.64

Interest installment due December 3, 1920........ 44.00
Interest on it to July 11, 1921.................. 2.12

　　　　　　　　　　　　　　　　　　　　　　$105.62
Credit July 11, 1921......................... 100.00

Balance due on interest.......................$　5.62
Interest on this balance to February 26, 1924...... .60
Interest installment due December 3, 1921........ 44.00
Interest on it to February 26, 1924............. 7.94
Interest installment due December 3, 1922........ 44.00
Interest on it to February 26, 1924............. 4.42
Interest installment due December 3, 1923........ 44.00
Interest on it to February 26, 1924.............. .90
Interest on $550 December 3, 1923, to February
　　26, 1924 ............................... 10.13

　　　　　　　　　　　　　　　　　　　　　　$161.61
Credit February 26, 1924..................... 200.00

Balance credit ............................$ 38.39
Deducted from principal..................... 550.00

Balance debit February 26, 1924...............$511.61
Interest on $511.61 February 26, 1924, to Decem-
　　ber 3, 1924 ........................... 31.19

Balance debit December 3, 1924...............$542.80
Interest on $542.80 December 3, 1924, to May 5,
　　1925 (date of decree)................... 18.34

　　　　　　　　　　　　　　　　　　　　　　$561.14
Attorney's fees, 10 per cent................... 56.11

　　　　　　　　　　　　　　　　　　　　　　$617.25
Credit insurance paid under former decree........ 364.84

Balance debit .............................$252.41

As the appellants claim overcharge of only $90.29 and apparently concede 'that the balance due is $494.52, strictly speaking, they should be concluded to that amount; but, as the rights of an infant are concerned, and it is the duty of the Court, as well as of the guardian *ad litem* and his attorney, to see that those rights are protected, we are not disposed to invoke this strict rule, but give the infant the benefit of the correct calculation. *Cagle v. Schafer,* 115 S. C., 35.

The next question is whether the infant, defendant Jerome Gill, and the defendant, Stella Jenkins, had the right, as claimed by both of them, to force the application of the payments made to O'Bryan by Ella Epperson, $100.00, by Stella Jenkins, $40.00 and $60.00, and by R. A. White, for his daughter, Stella Jenkins, $200.00, upon the bond and mortgage.

If the payments had been made directly to Miss Hodge, or to her agent duly authorized to receive them, it would be unjust to allow her to retain them without crediting them upon the mortgage debt, although the parties making the payments were volunteers, strangers to the contract between the mortgagor and the mortgagee. See a very exhaustive note to the case of *Crumlish v. Central Imp. Co.,* 38 W. Va., 390; 18 S. E., 456; 23 L. R. A., 120; 45 Am. St. Rep., 872; 21 R. C. L., 31; 30 Cyc., 1182.

As to the payments made by Ella Epperson of $100.00 and by Stella Jenkins of $40.00 and $60.00, it appears that those payments were made under a bargain made by O'Bryan with them or with one of them that, upon payment of the mortgage debt, they would receive title to a certain portion of the lot. The terms of this alleged bargain are exceedingly vague. O'Bryan, of course, had no authority to make any such bargain with them, and I do not think that the payments were received by him, in the actual scope of his agency, so as to charge Miss Hodge with their application to the mortgage debt. But it appears

that the administrator of Miss Hodge, after her death, recognized the validity of the bargain made by O'Bryan and was pressing White, the father of Stella Jenkins, and Stella Jenkins, for a completion of the payments; he demanded a settlement of the matter of them and sent White to O'Bryan for that purpose, who paid O'Bryan $200.00 upon the mortgage. Under these circumstances, I think that the administrator ratified the payments which had been made, and that all of them should be credited upon the mortgage debt, as has been done in the foregoing calculation.

The main question, in cases of payments by strangers to the contract, is whether the stranger has a claim against the principal debtor for reimbursement. He is not entitled to this unless the debtor has authorized the payment, or subsequently ratified it, or the stranger is personally interested in relieving the property from the lien of the mortgage.

In the case at bar, Jerome Gill, the sole heir of the mortgagor, by his guardian *ad litem,* is insisting upon the application of these payments to the mortgage debt, and for that reason must be held to have ratified the payments. He has no right to claim credit for them without being accountable to the volunteers for the payments made by them.

The decree should, therefore, be modified in the following particulars:

(1) That the plaintiff be adjudged entitled to judgment and a decree of foreclosure for $252.41, with interest at 7 per cent. from May 5, 1925.

(2) That Ella Epperson is entitled to $100.00, with interest at 7 per cent. from May 28, 1921.

(3) That Stella Jenkins is entitled to $100.00, with interest at 7 per cent. from July 11, 1921, and to $200.00, with interest at 7 per cent. from February 26, 1924.

(4) That from the proceeds of sale the amount due the plaintiff, as above stated, with the costs of the case, be first paid, and that out of the remainder the claims of Ella Ep-

person and Stella Jenkins be paid *pari-passu,* and that, if there be anything remaining, it be paid to a guardian to be appointed for Jerome Gill, each party to bear his or her own costs in the Supreme Court.

(5) Stella Jenkins should account for rents collected by her.

(6) Ella Epperson is not a party to this action, and Stella Jenkins is claiming the $100.00 paid by her. This controversy cannot now be determined. Unless an agreement between the parties can be reached, it will be necessary that Ella Epperson be made a party, and the matter recommitted to the Master to determine this controversy.

MESSRS. JUSTICES WATTS, BLEASE and STABLER, and MR. ACTING ASSOCIATE JUSTICE RAMAGE concur.

MR. CHIEF JUSTICE GARY did not participate.