AMERICAN EXCHANGE NAT. BANK OF
DALLAS v. KEELEY.

No. 10736.

Court of Civil Appeals of Texas. Dallas.

Jan. 31, 1931.

Rehearing Denied May 30, 1931.

Coke & Coke, and Thomas J. Murnane, all of Dallas, for appellant.

Coker, Wilson, Rhea & Neel, and J. Hardy Neel, all of Dallas, for appellee.

VAUGHAN, J.

Appellee, Thomas F. Keeley, instituted suit November 24, 1928, against appellant bank, independent executor of the estate of S. T. Morgan, deceased, to establish a claim of approximately $15,000, alleged to have been advanced about August 12, 1925, to pay off a note signed by Aztec Oil Company, a corporation, as principal, on which said Morgan was one of four sureties by indorsement.

Appellee, among other things, alleged: That on June 21, 1925, the Aztec Oil Company executed a note in the sum of $50,000, payable to the Houston National Bank of Houston, Tex., which was indorsed by W. H. Grey, S. T. Morgan, R. A. Welch, and L. A. Carlton; that thereafter, on October 15, 1925, appellee, on behalf of said Morgan, paid to the Houston National Bank the sum of $15,000 in discharge of Morgan's liability on said note; that thereafter said Morgan, with knowledge of all the facts, approved, confirmed, and ratified the acts of appellee in making said pay-

ment for his benefit, and promised and agreed in writing to pay appellee said sum of $15,000 plus interest; that said Morgan wrote letters to appellee, admitting therein the justness of appellee's claim and demand for the payment of said sum so advanced. Appellee further alleged that the sum of $4,478.49 had been paid to him and credited to the amount due him by said Morgan, but that the balance remained unpaid; that he duly and properly presented his claim to appellant, independent executor of the estate of said Morgan, which was refused.

Appellant's answer consisted of a general demurrer, general denial, and the two and four year statutes of limitation. Upon conclusion of the trial on December 19, 1929, both appellant and appellee moved for an instructed verdict. Appellee's motion was granted, and judgment entered December 20, 1929, in his favor for $13,151.88; said judgment and the basic proceeding leading thereto are properly before this court for review and revision. Appellee's suit was not filed within two years after the payment of said $15,000 to the Houston National Bank, and, to remove the bar of the limitation statutes, pleaded by appellant, appellee relied upon three letters received by him from S. T. Morgan, dated, respectively, July 17, December 14, and December 28, 1927.

Following are the material facts established without contradiction in the record: That on June 21, 1925, the Aztec Oil Company executed its promissory note in the sum of $50,000, payable to the order of the Houston National Bank of Houston, Tex., with interest thereon at the rate of 10 per cent. per annum from maturity until paid, due 90 days after date; that said note was indorsed by W. H. Grey, S. T. Morgan, L. A. Carlton, and R. A. Welch; that on October 15, 1925, the sum of $5,000 was paid on said note; that $15,000 was paid on said note by appellee by his check dated October 12, 1925, payable to the order of the Houston National Bank; that on or about said date, the estate of L. A. Carlton paid $15,000 and R. A. Welch $15,000 on said note; that on the payment of said three sums of money the following indorsement was placed on said note: "Pay to the order of R. A. Welch, estate of L. A. Carlton and Thomas F. Keeley, without recourse or warranty on us. Houston National Bank, by Milton Rorff, vice-president"; that some time after the next preceding indorsement was made, the exact date not being shown by the record, the following indorsement was made on said note: "This note is transferred to the Aztec Oil Company without recourse on us in consideration of the Aztec Oil Company delivering to each of us its $15,000.00 secured notes as partial remuneration for these cash payments made by each of us on this note. [Signed] R. A. Welch, Estate of L. A. Carlton by Otis Meredith, Thomas F. Keeley"; that

the Keeley named in said indorsements is the appellee herein; that said sum of $15,000 so paid by appellee was for the use and benefit of said Morgan, one of the indorsers on said $50,000 note in discharge of his liability thereon; that said payment was made without the knowledge or consent of said Morgan.

As to the circumstances under which appellee made the payment of said $15,000, Henry K. Maas, a witness for appellee, testified: "I know that Mr. Keeley gave that check; it was paid for Sam. T. Morgan and for his part of the indorsement on that note dated June 21, 1925; at that time, October 12, 1925, Mr. Morgan's condition, physically and financially, was bad; he was a sick man; he stayed at home most of the time and his finances had gotten in very bad shape; he had lost lot of money and at that time he did not have the cash to pay his portion of that note and the bank was demanding payment. W. H. Grey was head of the Aztec Oil Company and left very suddenly for Europe, and he was gone. The Bank demanded payment of Mr. Morgan and I wired Mr. Keeley, knowing that he was a personal friend and business associate, and Keeley came down and they had a meeting and Keeley agreed to pay Morgan's part of the note * * * along with Carlton and Welch."

Said Morgan was not advised of, and had no notice in reference to, any of the proceedings testified to by said witness, until long after said sum of $15,000 had been paid by appellee to the Houston National Bank to be applied as a credit on said $50,000 note for his use and benefit. Three letters written by Morgan to appellee were introduced in evidence, and from same we extract the following as being all that, in any respect, relates to the payment of said sum of $15,000 by said appellee, viz.:

From letter of date July 17, 1927, we quote: "In my hurried reply to your letter I overlooked expressing my deep appreciation of your kindness in payment for my account $15,000 on the Aztec Oil Company note to the Houston Bank for $50,000 * * *. I am in hopes that the Ratton Furniture Company will arrange by a larger loan to take up the second mortgage note and preferred stock and that at an early date in which evident I can with what the Aztec bonds may pay, 25 to 30 per cent., pay you and the bank."

From letter of date December 14, 1927, we quote: "I enclose statement, etc. and write you this somewhat lengthy letter for the purpose of suggesting or asking that after careful inquiry and investigation of the value and future of the 15th Avenue property that you consider taking it over in settlement or part settlement plus what may be finally realized, if anything, from the prorata of the Aztec Oil Company bond turned over by the Houston

Exchange National Bank at the time the note was paid. I have no data of date paid and amount of payment of this note except that I know that through ·kindness and your friendship for me, you voluntarily protected my liability on the note when payment of the note was demanded by the bank at the time I was sick; and I feel that had you not done so and kept the transaction from reaching me until I had somewhat recovered my health that this additional financial loss and trouble would have been sufficient to push me over the divide. Therefore, I am very desirous of getting this matter adjusted to the limit of my ability and especially to your entire satisfaction."

From letter of date December 28, 1927, we quote: "I have no word from Gray as to the affairs of the Aztec Oil Company. I did not expect any lengthy or very reliable report from him but I was in hopes of hearing from him to the extent of his estimate as to amount we would realize from the bonds, say, 20 to 30 cents on the dollar. At 20 cents we would get out of the bonds about $17,000 taken over from the Houston Bank $3400; this amount added to my equity in the Seattle property $19,294, mentioned in my letter of the 14th instant, would make total of $22,694, and would enable me to make a further reduction in the price of the property and leave balance sufficient to pay you the amount in full that you paid the bank—plus interest."

We further find that Morgan never did repay said sum of $15,000 to the Houston National Bank, or to appellee; that he died January 30, 1928; that, for the transfer by appellee of said $50,000 note to the Aztec Oil Company, he received from said company a note for the sum of $15,000, and $17,000 worth of its bonds as security therefor, part of the bonds that had been held as collateral by the Houston National Bank for the payment of the $50,000 note.

While it is doubtful that appellee's petition contains allegations sufficient to show that his cause of action was based upon a subsequent promise to pay the debt created by implication on account of the payment of said $15,000, and barred by the two-year statute of limitation at the time this suit was filed, nevertheless we will, for the purpose of disposing of this appeal, treat his petition as having alleged a new promise created by the three letters above set out as the foundation of his action, and that his allegations setting out his original cause of action were only made for the purpose of showing a consideration for the subsequent promise alleged by him to have been made. Coles v. Kelsey, 2 Tex. 542, 47 Am. Dec. 661; Howard & Hume, Adm'rs v. Windom, 86 Tex. 560, 26 S. W. 483; Leigh v. Linthecum, 30 Tex. 101.

It is to be affirmatively gathered from the contents of said three letters, supra, that said Morgan acknowledged a debt of $15,000 had been created against him in favor of appellee by the payment of that sum on the $50,000 note to the Houston National Bank, and expressed a willingness to pay appellee such debt. Coles v. Kelsey, supra; Smith v. Fly, 24 Tex. 345, 355, 76 Am. Dec. 109; Gathright v. Wheat, 70 Tex. 740, 9 S. W. 76.

Nevertheless, if the acknowledgment of the debt was accompanied with a promise to pay conditionally, the fact that the new promise contained the expression of a willingness to pay the bar of the statute of limitation would not be removed against the original cause of action forming the basis for the making of the new alleged promise. We have diligently searched the contents of the letters and have not been able to gather therefrom more than a meager conditional promise to pay appellee the indebtedness that was barred by the two-year statute of limitation at the time the suit was filed, and which constitutes the consideration for the making of the new alleged promise to pay. Mitchell v. Clay, 8 Tex. 443. In that case the court held:

"(1) It is perfectly well settled that the acknowledgment of a debt, if accompanied with a promise to pay conditionally, is of no avail, unless the condition be complied with, or the event happen, upon which the promise depends.

"(2) An offer to pay a debt which is barred by the Statute of Limitations, in specific articles, is a conditional promise, and will not avail the creditor as an acknowledgment of the justice of the claim, unless the offer be accepted within a reasonable time."

Appellee signally failed to establish that any one of the conditions upon which S. T. Morgan promised to pay said indebtedness was complied with, or that any one of the events to be found in said letters had happened upon which said promise to pay depended. McDonald v. Grey, 29 Tex. 80. From its syllabi we quote:

"(1) It is free from all doubt that an acknowledgment which, by its immediate effect, will take a debt out of the bar of the statute of limitation must be clear and unequivocal, and neither qualified by conditions nor limitations. (Paschal's Dig., Art. 4617a, Note 1027a.)—[Smith v. Fly], 24 Tex. 353.

"(2) If the new promise be upon condition, the plaintiff must prove a compliance with, or the happening of, the condition. [Mitchell v. Clay], 8 Tex. 443.

"(3) If the condition be the offer of a compromise, the plaintiff must prove that he accepted the terms."

In Webber v. Cochrane, 4 Tex. 31, it is held:

"The bar interposed by the statute, it is held now, can be repelled only by an express promise, which must be proved in a clear and ex-

plicit manner and be, in its terms, unequivocal and determinate. And if there be no express promise, but one is to be raised by implication of law, from the acknowledgment of the party, such acknowledgment should contain an unqualified and direct admission of a previous subsisting debt which the party is liable and willing to pay; or the acknowledgment must be coupled with such circumstances as irresistibly imply a promise to pay, and unaccompanied by any 'expression declarative, or qualification indicative, of a contrary intention.' ([Bell v. Morrison], 1 Pet. 362 [7 L. Ed. 174]; [Young v. Monpoly], 2 Bailey [S. C.] 280; [Bell v. Rowland's Adm'rs], 1 Hard. [Ky.] 301 [3 Am. Dec. 729]).

"These rules of construction were generally recognized before the enactment in England, Texas, New York, and perhaps other States, of a further security against the defeat of the statute, by requiring authentic written evidence of the alleged promise or acknowledgment."

Salinas v. Wright, 11 Tex. 572, from which we quote:

"Where the defendant had acknowledged in writing, that he was indebted to the plaintiff in a certain amount, which he promised to pay as soon as circumstances would permit, it was held that the plaintiff could not recover, on that instrument alone, without proof of the ability of the defendant to pay.

"Where the petition alleged a promissory note, and the plaintiff, instead thereof, proved a promise to pay as soon as circumstances would permit, and did not prove the defendant's ability to pay, it was held that the foundation of the action so manifestly failed, that the objection could be taken, although it was not assigned as error."

Also see Krueger v. Krueger, 76 Tex. 178, 180, 12 S. W. 1004, 7 L. R. A. 72; York v. Hughes (Tex. Com. App.) 286 S. W. 165; Smith v. Fly, supra; Rowlett v. Lane, 43 Tex. 274, 276.

Appellee's cause of action was upon the implied promise created by the payment of the $15,000 by him on the $50,000 note for the use and benefit of S. T. Morgan, and not upon that note or the note for $15,000 executed by the Aztec Oil Company to appellee, and said original cause of action, under the facts of this case, was barred by the statute of limitation of two years at the time this suit was instituted. Faires v. Cockerell, 88 Tex. 428, 31 S. W. 190, 639, 28 L. R. A. 528; Boyd v. Beville, 91 Tex. 439, 44 S. W. 287.

In view of the fact that a determination of the propositions not herein discussed is not necessary to a disposition of this appeal, same is pretermitted.

We are of opinion that the judgment of the trial court should be reversed, and judgment here rendered for appellant, that appellee take nothing by his suit, and it is so ordered.

Reversed and rendered.

On Appellee's Motion for Rehearing.

From this motion it is made to appear that the trial court, in instructing the jury to return a verdict in favor of appellee, was actuated by the theory on which the case was presented, not so much by appellee's petition as by the way appellant's defense thereto shaped and made prominent the theory that appellee's case, as developed, rested entirely on the following allegations of his petition:

"That thereafter on October 15, 1925, and after the last said note heretofore mentioned became due, and after payment of same had been demanded by the Houston National Bank, and of the Aztec Oil Company and the endorsers, W. H. Gray, S. T. Morgan, L. A. Carlton and R. A. Welch, said note was credited with a Five Thousand ($5000) Dollar payment. That on the same date, the plaintiff, Thomas F. Keeley, for and in behalf of S. T. Morgan, then living, but now deceased, paid the sum of Fifteen Thousand ($15,000) Dollars to the Houston National Bank, which was credited on the note heretofore described; that Fifteen Thousand ($15,000) Dollars was paid the Houston National Bank by the estate of L. A. Carlton, then deceased, and Fifteen Thousand ($15,000) Dollars was also paid by R. A. Welch, and the said note was, at that time, endorsed by the Houston National Bank to R. A. Welch, the estate of L. A. Carlton, deceased, and the plaintiff, Thomas F. Keeley, without recourse.

"That thereafter, the said S. T. Morgan, now deceased, recovered from his then sickness, and was again restored to his health sufficiently to transact his business and manage his property, and after being advised that the plaintiff, Thomas F. Keeley, had, for and in behalf of S. T. Morgan, paid the sum of Fifteen Thousand ($15,000) Dollars on the said note, he, the said S. T. Morgan, ratified and approved the payment of said sum of money by the plaintiff, by acknowledging in writing the justness of the claim, and acknowledging in writing the payment made by Thomas F. Keeley, and approving of same, and stating and agreeing therein to reimburse and pay to the plaintiff the entire amount paid by him, together with interest thereon."

That appellant interpreted appellee's cause of action as being based upon a verbal promise of decedent, Morgan, made October 15, 1925, to repay him the sum of $15,000 paid by appellee to the Houston National Bank, on which said Morgan was one of four sureties, is evidenced by the fact that appellant based its entire defense thereto upon a general denial and the two-year statute of limitation, and confined the introduction of evidence princi-

pally in support of its plea of limitation. Appellee, to remove the bar of limitation thus pleaded and sought to be established, relied upon the three letters written by decedent, Morgan, to him, contending that same was sufficient to and did remove the bar of the two-year statute of limitation, in that same constituted an acknowledgment coupled with a promise to pay the indebtedness then claimed and to recover which this suit was filed. This is further borne out by the following grounds contained in appellant's motion for a new trial: "(a) Same is not supported by the pleadings, in that the plaintiff sues upon an implied promise to repay money advanced in October, 1925, while by said letters he seeks to prove and recover upon a different tract not alleged in the pleadings; (b) same is not supported by the pleadings, in that, plaintiff sues herein upon an implied contract to repay money advanced for defendant in October, 1925, while by said letter he seeks to set up and recover on a different contract; (c) said letter is insufficient as an acknowledgment of the debt in accordance with the requirements of article 5539, Revised Civil Statutes of Texas, 1925, for the following reasons: (1) It contains no unqualified absolute promise to pay, (2) contains no acknowledgment of the debt, (3) does not refer to or identify the alleged debt sued on herein, (4) contains an offer upon condition, (5) consists of a mere offer of compromise. * * *"

We are to assume that appellant's contentions in the court below were the same as in this court, and that appellee opposed same in the trial court in keeping with some of his counter propositions presented on this appeal.

The above review of the proceedings in the court below, as reflected by the record before us, is no doubt explanatory of the action of the trial court in instructing a verdict in favor of appellee, and of this court's action in reversing and rendering the case on the ground that the trial court should have rendered judgment in favor of appellant based upon the issue upon which the trial court's peremptory instruction was predicated in favor of appellee. A careful investigation of the case, as made by pleadings and the evidence, disclosed a situation necessitating the granting of appellee's motion for rehearing, in that the following testimony clearly presented material issues of fact that should have been submitted to the jury for their determination: "That on the 23rd day of March, 1925, the Aztec Oil Company, by W. H. Gray, its president, executed and delivered to the Houston National Exchange Bank of Houston, Texas, its promissory note, in the principal sum of Fifty Thousand ($50,000) Dollars, due ninety days after date, which note was secured by gold bonds of the Aztec Oil Company, being Numbers 116 to 117, inclusive, in the amount of One Thousand ($1,000) Dollars, each, and bonds Numbers 254 to 309, inclusive, in the amount of Five Hundred ($500) Dollars, each. That the said Fifty Thousand Dollar note was endorsed in blank by W. H. Gray, S. T. Morgan, R. A. Welch and L. A. Carlton. That said note was renewed on the 21st day of June, A. D. 1925, by the execution by the Aztec Oil Company of its note in the sum of Fifty Thousand ($50,000) Dollars, payable ninety days after date, to the Houston National Bank of Houston, Texas, the successor in business of the Houston National Exchange Bank, which note was secured by the same bonds of the Aztec Oil Company, hereinbefore more particularly described, and was endorsed by Gray, Morgan, Carlton and Welch."

On October 15, 1925, the note dated June 21, 1925, became due, payment was demanded by the holder thereof, the Houston National Bank, of the Aztec Oil Company and indorsers, Gray, Morgan, Welch, and the estate of L. A. Carlton, deceased; that at said time the sum of $5,000 was paid on said note by the Aztec Oil Company and appellee paid the sum of $15,000, the estate of L. A. Carlton, deceased, $15,000, and R. A. Welch, $15,000, which said payments were credited on said note, and it was indorsed by the Houston National Bank, as follows: "Pay to the order of R. A. Welch, estate of L. A. Carlton, deceased, and Thomas F. Keeley, without recourse or warranty on us," and delivered to said indorsees; that, at the time said indorsement was made, appellee delivered to the Houston National Bank the following check, duly drawn and signed by him, viz.: "Continental & Commercial Trust & Savings Bank, Chicago, Oct. 12, 1925. Pay to the order of Houston National Bank $15,000—Fifteen Thousand no/100 dollars. [Signed] Thomas F. Keeley," on which the Houston National Bank received the sum of $15,000 and applied same as a payment on said $50,000 note; that said $50,000 note was immediately thereafter transferred and delivered by said Welch, estate of L. A. Carlton, deceased, and appellee, Keeley, to the Aztec Oil Company as per their indorsement thereon: "This note is transferred to the Aztec Oil Company, without recourse on us, in consideration of the Aztec Oil Company delivering to each of us its Fifteen Thousand ($15,000) Dollar secured notes, as partial remuneration for the cash payment made by each of us on this note"; that, at the time said transfer was made, appellee, Keeley, received from the Aztec Oil Company, as consideration for the making of the transfer, one note in the sum of $15,000, executed by said Aztec Oil Company, payable to said appellee, Keeley, and also received from said oil company for the purpose of securing the payment of said $15,000 note, bonds of said oil company of the face value of $17,000; that, at the time of said transactions, the decedent, S. T. Morgan, was very sick, in a dangerous and critical physical condition; that the Houston National Bank, payee in said note, was demanding

payment of same and threatening to take necessary legal steps to enforce its collection; that appellee and said Morgan had been very friendly for thirty years as business associates; that Morgan died January 30, 1928; that the record does not show what disposition was made by appellee of said $15,000 note and bonds in the sum of $17,000, received from the Aztec Oil Company.

It is not to be gathered from the evidence, there being no degree of testimony to that effect, that decedent, Morgan, knew anything about or was ever advised by any one in reference to the transactions that were in fact had in reference to the handling and disposition made of said $50,000 note by appellee Welch and the estate of L. A. Carlton, deceased; but, to the contrary, it appears therefrom that the transactions in reference thereto were not disclosed to said Morgan. The only evidence introduced in this respect were the statements contained in the three letters written by said Morgan to appellee and the testimony of appellee's witness Maas as set out herein and in our original opinion.

Article 5526, R. S. 1925, in part reads: "There shall be commenced and prosecuted within two years after the cause of action shall have accrued, and not afterward, all actions or suits in court of the following description. * * *" When can it be said that a cause of action has accrued within the meaning of said statute, becomes a material inquiry in view of the contentions of the parties litigant. In the case of Port Arthur, etc., v. Beaumont, etc., Mills, 105 Tex. 514, 143 S. W. 926, 928, 148 S. W. 283, 150 S. W. 884, 152 S. W. 629, the following rule is announced: " * * * Before it can be said that a cause of action exists in a legal sense, there must be such a mature right as may be declared upon and maintained, subject only to such valid defenses by which it may be defeated. In 25 Cyc. 1065, the rule is laid down as follows: ' "The accrual of the cause of action" means the right to institute and maintain a suit; and whenever one person may sue another a cause of action has accrued, and the statute begins to run.' Again, in 25 Cyc. 1065, it is said: 'The statute of limitation begins to run from the time when a complete cause of action accrued—that is, when a suit may be maintained—and not until that time.' "

■■ The statute of limitation, therefore, can only be put in motion under said article when the right or cause of action accrues, and not before, and this does not exist until facts have arisen which authorize a person asserting a claim to obtain relief from some court of justice against the person liable on the alleged cause of action. Stanley v. Schwalby, 85 Tex. 348, 19 S. W. 264; Leach v. Wilson County, 62 Tex. 331; Reese v. Cobb (Tex. Civ. App.) 135 S. W. 220; Kansas City, M. & O. Ry. Co. v. State (Tex. Civ. App.) 155 S. W. 561; 37 C. J. 810, § 153.

■ Within itself, the voluntary payment by A of a debt due by B, without B's request, would not create a legal liability on the part of B to repay A the sum of money so paid for the use and benefit of B. Mings v. Griggsby Const. Co. (Tex. Civ. App.) 106 S. W. 192; Donaghey v. Williams, 123 Ark. 411, 185 S. W. 778; Pittsburgh-Westmoreland Coal Co. v. Kerr, 220 N. Y. 137, 115 N. E. 465.

■■ In order for a cause of action to accrue on account of such transaction, it would be necessary that B, with a full knowledge of same, sanction and adopt the payment made by accepting the benefits thereof. However, if such payment is sanctioned and adopted by B (debtor), he thereby makes A (payor) his agent, and the promise to refund will be implied. Ross v. Pearson, 21 Ala. 473; Lee's Ex'rs v. Virginia & Maryland Bridge Co., 18 W. Va. 299; Neely v. Jones, 16 W. Va. 625, 37 Am. Rep. 794; Wolff v. Matthews, 39 Mo. App. 376; Hodge v. De Laine, 137 S. C. 337, 135 S. E. 357; 41 C. J. 19 § 19.

■ Therefore, a cause of action would only accrue and legally exist on account of such voluntary payment from the date same was sanctioned and adopted by B, and the statute of limitation would only run from that date. Deaton v. Rush, 113 Tex. 176, 252 S. W. 1025; Southwestern Lumber Co. v. Evans et al. (Tex. Civ. App.) 275 S. W. 1078; Jones County v. Moore (Tex. Civ. App.) 4 S.W.(2d) 289; Angelina County v. Bond (Tex. Civ. App.) 16 S.W.(2d) 338; Irvine v. Angus (C. C. A.) 93 F. 629; Goodnow v. Stryker, 61 Iowa, 261, 16 N. W. 486; Pleasant Valley Hotel Co. v. Henderson, 33 Cal. App. 76, 164 P. 420; Runyon v. Snell, 116 Ind. 164, 18 N. E. 522, 9 Am. St. Rep. 839.

■ Following are the material issues that were presented by the pleadings and supported by evidence, herein set out, and that in the original opinion, which should have been but were not submitted to the jury, viz.: (a) Whether or not appellee voluntarily advanced and paid $15,000 for decedent, Morgan, on the involved $50,000 promissory note; (b) did decedent, Morgan, thereafter, with knowledge of all of the facts under which said $15,000 was paid, accept the benefits of same; (c) whether or not said transaction was an investment by appellee for his own use and benefit. From this it follows as a natural sequence that, not only the court below erred in instructing a verdict to be returned in favor of appellee, but likewise this court committed error, not in reversing the judgment of the lower court, but in rendering judgment in favor of appellant.

Appellee's motion for rehearing is therefore granted, and the judgment heretofore entered, reversing and rendering this cause,

is set aside, and, instead thereof, judgment is now rendered reversing and remanding said cause for further proceedings not inconsistent with this opinion.

Reversed and remanded.

### On Appellant's Motion for Rehearing.

In our original opinion, we did not discuss appellant's propositions based upon the action of the trial court in overruling appellant's objections to and permitting the following testimony of appellee, by deposition, to be introduced in evidence:

"Q. Please state what comprised the securities on the fifteen thousand dollar note delivered to you? A. I got the fifteen thousand dollar note with seventeen thousand dollars worth of Aztec Oil Company bonds. The bonds were as collateral to the note to the Houston National Bank.

"Q. Mr. Keeley, state for whom, if any one, you were acting when you received the fifteen thousand dollar note, together with the securities referred to above? A. I was acting for Sam Morgan.

"Q. State whether or not you accepted that note and the securities as in full payment and settlement due you of the amount you had paid for Mr. Morgan? A. No sir, I merely acted for Sam Morgan to relieve him of that responsibility until such time as he could take care of it himself."

Appellant objected thereto on the following grounds: (a) That every question and answer therein related to an alleged transaction by plaintiff with the decedent, S. T. Morgan, and as such was inadmissible under the provisions of Article 3716, R. S. 1925; (b) same constitute a self-serving declaration by plaintiff as to an alleged transaction on behalf of decedent; and (c) same was offered for the purpose of varying * * * the unambiguous terms of the indorsement upon the note dated June 21, 1925, showing that plaintiff surrendered and canceled the alleged obligation and accepted in lieu thereof the new obligation of said principal, Aztec Oil Company, for which company decedent, Morgan, was surety, and was inadmissible for the purpose of varying or contradicting the purpose and effect of said surrender and cancellation. In its motion for rehearing, appellant assigns this omission as error. Therefore, and in view of the fact that appellant is entitled to have this court "file a conclusion of fact and law upon" said points under articles 1873 and 1875, R. S. 1925, relating, respectively, to conclusions of fact and law and supplemental findings, said motion to that extent is granted.

Evidence inhibited by article 3716, supra, is as to "any transaction with, or statement by, the testator, intestate or ward," and unless the evidence so objected to related to a transaction with decedent, Morgan, appellant's objection (a) was properly overruled.

A careful analysis of said testimony we think demonstrates that same was not in reference to any transaction had with decedent, Morgan, in that, by other uncontradicted evidence, it was established that no transaction in reference to the facts so testified to was had by appellee with deceased, Morgan, and, further, that appellee was testifying as to his intention; in other words, that mental attitude which moved him to engage in the transaction involving the payment of $15,000 on the note for $50,000, and the other acts related thereto, and not as to any transaction had with decedent. Dean v. Dean (Tex. Civ. App.) 214 S. W. 505; Potter v. Wheat, 53 Tex. 401; Dodson v. Watson (Tex. Civ. App.) 225 S. W. 586; Bradley v. Bradley's Adm'r, 178 Ky. 239, 198 S. W. 905; Omlie v. O'Toole, 16 N. D. 126, 112 N. W. 677; In re Knibbs' Estate, 108 App. Div. 134, 96 N. Y. S. 40; Larson v. Swingley, 105 Neb. 116, 179 N. W. 303.

We are aware of the fact that there are some expressions in the following cases that prima facie appear to be in conflict with the above holding, viz.: Holland v. Mimitz, 111 Tex. 419, 423, 433, 232 S. W. 298, 239 S. W. 185; Neitch v. Hillmann, 29 Tex. Civ. App. 544, 69 S. W. 494; Heath v. Moore (Tex. Civ. App.) 146 S. W. 709; Anderson v. Caulk (Tex. Civ. App.) 5 S.W.(2d) 816; Horlock v. Guardian Trust Co. (Tex. Civ. App.) 274 S. W. 204; Madero v. Calzado (Tex. Civ. App.) 281 S. W. 328. However, after a careful analysis of the facts of each of these cases, we have reached the conclusion that same do not present a real conflict.

As to objection (b), we think it is sufficient to say that, although in a sense said testimony was self-serving, in that, it could only be of beneficial interest to appellee, yet it was admissible on a material issue, viz. In what respect did appellee in fact act, to make an investment for himself or to render a voluntary service to said Morgan? The environments of this case, both as to pleadings and evidence, relieved said testimony from being self-serving, as that term, in legal parlance, is generally used. This, in the main, because said testimony was not absolutely inconsistent with the existence of facts different from those so testified to as same may be harmonized with, or used in explanation of, such different acts. State v. Lockett, 168 Mo. 480, 68 S. W. 563, 565; Brosnan v. Boggs, 101 Or. 472, 198 P. 890, 892.

As to objection (c), we do not think said testimony appears from the record to have been offered merely for the purpose of contradicting the indorsement of date June 21, 1925, upon the $50,000 note or the wording of the note for $15,000 received by appellee, nor to contradict the purpose and effect of the surrender and cancellation of the $50,000 note to the Aztec Oil Company, but as evidence

bearing upon and to be taken into account in determining whether or not there existed, because of said transactions, a cause of action in favor of appellee.

We therefore hold that the court did not err in overruling said objections and in admitting said testimony. Said motion is in all things overruled.

Overruled.